**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Edward KIRSCH, III, Defendant-Appellant.**

**No. 73–2910.**

United States Court of Appeals,
Fifth Circuit.

May 3, 1974.

Rehearing and Rehearing En Banc
Denied July 12, 1974.

Carl J. Barbier, New Orleans, La. (Court-appointed), for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Stephen A. Mayo, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before GOLDBERG and AINSWORTH, Circuit Judges, and LYNNE, District Judge.

PER CURIAM:

Appellant Kirsch seeks reversal of his conviction for violation of 18 U.S.C. Appendix § 1202(a), which prohibits receipt, possession, or transportation of a firearm by one having been convicted of a felony. Finding that the trial court erred in admitting into evidence the incriminating pistol, holster, and bullets, seized as the result of a constitutionally impermissible frisk, we reverse.[1]

At approximately 2:00 a. m. on the morning of February 6, 1973, Kirsch was stopped by two officers of the New Orleans police department because they found his manner of driving suspicious.

---

1. Appellant raises five contentions of error in addition to the claim that the district court wrongfully refused to suppress. Our disposition on that point, however, makes it unnecessary to consider the others.

After the stop Kirsch, who was riding with three women, got out of the car and walked back to talk to the officers. Apparently on the basis of appellant's inarticulate and confused responses to questioning, Officer Magee patted him down. This frisk led ultimately to the discovery of the firearm and accompanying paraphernalia. At oral argument counsel for both appellant and the Government agreed that the admissibility of each of these items turned on the constitutional validity of the frisk.

The constitutional prerequisites for a frisk of the person following an investigative stop appear in the Supreme Court's opinion in Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Noting that "even a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security," [2] the Court established a limiting standard.

"Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the 'individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. . . . And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."

392 U.S. at 27, 88 S.Ct. at 1883. The Court emphasized that in order to satisfy constitutional scrutiny, all inferences must be based on "specific and articulable facts." 392 U.S. at 21, 88 S.Ct. 1868.

In this case the only specific, articulable facts that might conceivably have prompted a fear for personal safety or a suspicion of the presence of an armed man were Kirsch's actions in getting out of the car, standing around nervously, and giving confused explanations for his presence in the neighborhood. However, Officer Magee, who made the original stop, conducted the frisk, and observed these occurrences first hand, testified at trial that at no time was he in fear of life or limb, that he had no basis for a belief that Kirsch was armed or dangerous, and that he did not believe appellant to be armed at the time of the frisk. This Court has in the past attached considerable significance to the on-the-scene evaluation of an experienced policeman when his judgment argued in support of the search. We find that seasoned judgment no less persuasive in our determinations when the officer candidly admits that he acted in the absence of any reasonable suspicion. What emerges from the testimony is the description of a frisk undertaken as a purely routine matter and not in response to any suspicious or unnerving conduct on the part of the "suspect." It is precisely this reflexive police activity that the *Terry* standards quoted above were designed to curb. The pistol, holster, and bullets—all the fruits of an unlawful search—ought to have been suppressed.

Reversed and remanded.

2. 392 U.S. at 24–25, 88 S.Ct. at 1881.