**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rufus A. RIAS, Defendant-Appellant.**

**No. 75–1473.**

United States Court of Appeals,
Fifth Circuit.

Dec. 4, 1975.

Theodore Sakowitz, Federal Public Defender (Court-appointed not under Act), Thomas Almon, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Jamie L. Whitten, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

Defendant Rufus A. Rias appeals from his judgment of conviction for possession of stolen mail in violation of 18 U.S.C. § 1708. We reverse.

On September 5, 1974 at approximately one o'clock in the afternoon, Officer Michael Richberg of the Miami Public Safety Department was observing traffic from a marked car when he noticed the defendant and a passenger, both black males, drive past in a black Chevrolet. Richberg knew that two black males in a black or blue Chevrolet were suspects in a series of Farm Store robberies, the most recent of which, so far as he knew, had occurred at least two weeks and possibly a month earlier; he also knew that there was a Farm Store in the general vicinity. The officer attempted to follow the car, but soon lost it and returned to his original location. When, about twenty minutes later, he again sighted

the vehicle traveling in the opposite direction, he followed for about seven blocks and then signaled the driver to pull over. The officer testified that it was not unusual for blacks to be seen in this area of the city, that when he followed the men in a marked car they made no attempt to flee, and that he did not stop them for violating any traffic laws.

Richberg first talked with appellant Rias's companion, who stated that his sister had had a flat tire and that the men had gone to help her. Rias, who had been driving the automobile, was then questioned. He produced a valid driver's license to establish his identity, and told the officer that he had been to see an attorney. When informed of the discrepancy in their stories, Rias explained that he was a postal employee and "didn't want anybody to know where he was going and that his friend was just scared to tell [the officer] the truth."

Following a fruitless pat-down of the men, Richberg secured them in the back of the police car and informed them of their rights, although he did not advise them of any specific charge. He then searched the vehicle and discovered in the closed glove compartment a number of blank, personalized checks, which became the basis of the indictment against Rias.[1] In a non-jury trial, Rias was convicted of possession of stolen mail. He received a two-year suspended sentence, and an eighteen-month term of probation conditioned on his participation in a 24-hour drug rehabilitation program.

■ The only issues presented to this court on appeal concern the trial court's denial of the defendant's motion to suppress the checks and their subsequent admission into evidence. Rias challenges the admissibility of the evidence on three bases: (1) the authority to stop the automobile; (2) the legality of the warrantless search once the automobile had been stopped; and (3) the constitutionality of the loitering and prowling ordinance under which he was initially charged. Because we have determined that the officer had neither authority to stop the car in the first instance, nor probable cause to arrest the occupants or search the vehicle, we hold that the search was illegal and the fruits thereof subject to a motion to suppress, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and reverse the conviction without reaching appellant's constitutional challenge.[2]

■ The courts have recognized the right of a police officer to stop and detain an individual under certain circumstances. *E. g., Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. McCann*, 465 F.2d 147 (5th Cir. 1972), *cert. denied sub nom., Kelly v. United States*, 412 U.S. 927, 93 S.Ct.

---

1. Richberg did not suspect any illegal activity concerning the checks. After summoning a backup unit to secure the vehicle, he accompanied Rias to verify his explanation of the two men's activities; it proved to be false. Rias's companion was then charged with giving false information to a police officer; Rias, however, was charged only with violating a city loitering and prowling ordinance. At the police station, Richberg informed a detective of the checks found in the glove compartment. The detective searched the vehicle and the checks were seized. Miami police informed federal authorities, who subsequently charged defendant with mail theft and possession of stolen mail based upon the seized checks. The theft count was dismissed at trial.

2. "The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688, 711 (1936) (Brandeis, J., dissenting in part). *See Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706, 719 (1974). As we said in *Korioth v. Briscoe*, 523 F.2d 1271, 1275 (5th Cir. 1975) (footnotes omitted), "Cases are to be decided on the narrowest legal grounds available, and relief is to be tailored carefully to the nature of the dispute before the court."

2747, 37 L.Ed.2d 154 (1973). The circumstances required to justify such action, however, must be sufficient to enable a police officer reasonably to suspect that the particular individual is involved in criminal activity. *United States v. McCann, supra,* at 158; *see Terry v. Ohio, supra,* 392 U.S. at 30, 88 S.Ct. 1868, 20 L.Ed.2d at 911. In *Adams,* the Court stated: "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable *in light of the facts known to the officer at the time.*" 407 U.S. at 146, 92 S.Ct. at 1923, 32 L.Ed.2d at 617 (emphasis added). In the instant case, the facts known to the officer at the time he stopped the defendant clearly did not rise to the required level, and in reality were so tenuous as to provide virtually no grounds whatsoever for suspicion. The officer was unsure whether the automobile used in the robberies was black or blue; the only description of the robbers was that they were black males; the last armed robbery of which he had any knowledge had occurred at least two weeks, and possibly a month, earlier; it was not unusual for blacks to be seen in the area; it was midday; the suspects made no attempt to flee. In short, the officer simply stopped two black males because they were in a black Chevrolet. This fact alone, without additional reliable evidence sufficient to warrant the conclusion that either or both of the men had been or were involved in criminal activi-

ty, did not constitute cause to stop the vehicle.

Furthermore, the facts upon which Richberg acted in arresting Rias and searching his car fell far short of probable cause, and the arrest and subsequent search clearly violated his Fourth Amendment rights. After accompanying Rias to ascertain the veracity of his explanation of the men's activities, Richberg charged Rias with violating a Miami ordinance prohibiting "loitering and prowling." [3] Rias challenges the constitutionality of this ordinance on a number of grounds, but we need not and do not reach this issue.[4] Under no law, whatever its proscriptions, could Rias's conduct coupled with the officer's knowledge at the time of the stop, as revealed by the record in this case, provide probable cause for either an arrest or a search.[5]

The trial judge relied upon our decision in *United States v. McCann, supra,* in denying the defense motion to suppress. He rejected the defendant's contention that the stop itself violated his rights, and concluded that the conflicting stories given by Rias and his companion provided the requisite probable cause to arrest and search. In *McCann,* the knowledge upon which the officer acted in stopping the car provided a sound basis for reasonable suspicion:

"At the time he stopped the Mustang, Taylor [the officer] knew, *inter alia,* that certain cars, of which the Mustang was one, had been parked in the same residential neighborhood for

---

**3.** The statute reads as follows:

It shall be unlawful for any person to loiter or prowl in a place, at a time, or in a manner not usual for lawabiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity. Among the circumstances which may be considered in determining whether such alarm is warranted is the fact that such person takes flight upon appearance of a police officer, refuses to identify himself or manifestly endeavors to conceal himself or any object. Unless flight by such person or other circumstances makes it impracticable, a police officer shall, prior to any arrest for an offense under this section, afford such person an opportunity to dispel any alarm

which would otherwise be warranted, by requesting him to identify himself and explain his conduct. No person shall be convicted of an offense under this section if the police officer did not comply with the preceding sentence, or if it appears at trial that the explanation given by such person was true and, if believed by the police officer at the time, would have dispelled the alarm. (Ord. No. 7299, § 1). Miami City Code, § 38–26, p. 960.

**4.** See note 2, *supra.*

**5.** Our finding that no probable cause to arrest existed necessarily forecloses any claim that the search was justified as incident to a lawful arrest.

a period of eight days; that a different car had appeared almost daily in the neighborhood; and that no one car had been allowed to remain in the neighborhood for an extended period. He also knew that the men who had rented these cars had no acquaintances in or connection with the neighborhood; that one of them, Jon Joseph Kelly, had given false information to motels and car rental agencies concerning his home address and a prior motel address; and that Kelly had also asked the Holiday Inn North not to disclose the fact that he was registered there.

"Taylor knew that police officers had seen newspapers arranged to cover the right front floorboard in two of the cars, . . . and that the newspapers in both cars were three or four inches above the floorboard so as to apparently conceal some article. He also knew several burglaries had occurred in the area and that on past occasions under similar conditions, vehicles had been used as 'narcotics drops'."

465 F.2d at 158. Reasonable grounds for suspicion are, however, completely ab-

sent in the instant case. *McCann*, then, is clearly distinguishable on the issue of the validity of the stop.

■ Concerning the legality of Taylor's warrantless search of the vehicle,[6] the *McCann* court concluded that it was justified on the grounds of consent, which is not an issue here, and of probable cause. The court, assuming *arguendo* that there was not probable cause to search when the car was stopped, opined that the driver's conduct and his "bizarre answers" evidencing "a patently clumsy and incredible attempt at . . . evasion"[7] provided the requisite probable cause "*when combined with the information [the officer] had at the time of the stop.*" 465 F.2d at 159 (emphasis added). The court clearly based its decision on all of the facts and circumstances known to the officer, not merely on the driver's responses. Here, there were no bizarre answers or obvious attempts at evasion. Rias had produced a valid driver's license to identify himself; the men gave reasonable, though conflicting, accounts of their activities; and Rias offered a plausible explanation for the discrepancy. These facts, when combined with those known to the officer at the time of the stop, did not constitute probable cause.[8]

---

**6.** In *McCann*, the search occurred prior to the arrest, whereas in the instant case, the order of events was the opposite. The standard to be applied, however, is the same: probable cause is required for either an arrest—a seizure of the person—or a search. Therefore, the quantum of evidence required to justify the search in *McCann* is relevant to our inquiry into the legality of the pre-search arrest of Rias. See, e. g., *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637, 644 (1969) (probable cause for issuance of a search warrant), wherein the Court found *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (probable cause for a warrantless arrest), a "suitable benchmark."

**7.** The driver had told the officer that a "friend" had dropped him off to pick up his car, but that he did not know the friend's name or whereabouts. When asked what was beneath the newspapers, he responded that he did not remember. 465 F.2d at 152, 159.

**8.** Other cases relied upon by the government to justify the stop, arrest, and search are also distinguishable. In *Chambers v. Maroney*, 399

U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), two armed robberies had occurred within a week; after the second holdup, witnesses informed police that one of the two males involved was wearing a green sweater, the other a trench coat, and that they left in a compact station wagon with two other men. Within an hour, a car matching that description and carrying four men was stopped about two miles from the scene of the crime; one occupant was wearing a green sweater, and there was a trench coat in the car. The Court upheld a warrantless post-arrest search.

This court in *United States v. West*, 460 F.2d 374 (5th Cir. 1972), held that when an officer, answering an official call at 1:00 a. m., found a car with a police radio monitor, siren, and red flashing light in a ditch; a driver who gave evasive answers; and a passenger who refused to identify himself, made furtive movements to hide a bottle, and reached for a plainly visible gun, the officer had not only a right but a duty to investigate. Similarly, in *Johnson v. Wright*, 509 F.2d 828 (5th Cir. 1975), we upheld a stop, search, and arrest where an armed robbery suspect had been described as a tall

Were we to fail, on these facts, to condemn the actions of the officer in stopping and arresting Rias, there would remain virtually no limitations on the power of the police to stop, arrest, and search citizens and their vehicles and then use any incriminating evidence they may find in a court of law. Such unbridled license would effectively eliminate from the Constitution the Fourth Amendment protection afforded citizens in public places. That is a result which we cannot condone.

Reversed.

black male in his early twenties wearing a floppy hat and driving a red Ford Fairlane with a jacked up rear end, its license plate wired on, and carrying three black male passengers. The car and occupants stopped precisely fit this description, and a pistol was observed on the front seat.

The instant case is closer to that in *United States v. Kirsch*, 493 F.2d 465 (5th Cir. 1974), where we held invalid a frisk following the 2:00 a. m. stop of the defendant's car. Kirsch had exhibited nervousness and given "confused explanations for his presence in the neighborhood." 493 F.2d at 466. We found that the frisk had been "undertaken as a purely routine matter and not in response to any suspicious or unnerving conduct on the part of the 'suspect'," *id.*, and that it therefore failed to meet the standard of *Terry v. Ohio, supra.* The *Terry* standard for "frisks" is, of course, less stringent than the probable cause requirement for arrests, searches and seizures.