567 P.2d 1276

STATE of Idaho, Plaintiff-Appellant,

v.

Robert Dale ALLGOOD and Duane E. Grimes, Defendants-Respondents.

No. 12341.

Supreme Court of Idaho.

Aug. 25, 1977.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Arthur J. Berry, Asst. Atty. Gen., Boise, for plaintiff-appellant.

Richard P. Wallace, Michael Verbillis, Coeur d'Alene, for defendants-respondents.

DONALDSON, Justice.

This case involves a motion to suppress evidence allegedly obtained by an illegal search and seizure. The facts as found by the trial court can be briefly summarized. While on patrol in the vicinity of a local tavern in Kootenai County, Idaho, two police officers, Robert E. Hill and Robert Rapp, observed defendants Duane Grimes and Robert Allgood exit from the tavern and enter a parked 1970 Dodge automobile with Washington license plates. The driver of the automobile, defendant Allgood, moved the vehicle from the parked position 180° to the same location facing the tavern and stopped the vehicle.

The officers observed beer cans on the ground on the driver's side of the car and since the two defendants appeared young in age, the officers thought that there might be a liquor law violation. As the officers drove up to the car, both defendants hastily left the vehicle and proceeded back across the parking lot towards the tavern. The two officers got out of their patrol car, stopped the two defendants in the parking lot about thirty feet from their car, and asked for their identification. Their identification showed that both defendants were of age.

In the course of the questioning, defendant Allgood stated that the car was not his but belonged to his brother-in-law. Suspecting that the vehicle may have been stolen, Officer Hill required Allgood to produce the registration to the vehicle.

From this point forward, the testimony is conflicting. The arresting officers testified that they escorted Allgood to the car where, after Allgood opened the door, the officers observed two plastic bags of green leafy substance in plain view inside the automobile. The defendants testified however that the plastic baggies were concealed within the glove compartment and behind the passenger's visor and that they were not uncovered until after the officers made a formal search of the vehicle.

The district court resolved this motion in favor of the defendants. The court held that after the officers determined that the defendants had not violated the liquor laws they could not have had any reasonable suspicions of criminal activity. From that point on the detention of the defendants was unlawful. Since the detention was unlawful, the arresting officers' presence by the defendant's car was not legal and hence the plain view doctrine could not justify the seizure of the evidence.

We disagree with the district court's conclusion that reasonable suspicions of criminal activity did not exist after the defendants showed that they were of legal drinking age. We reverse on this ground but

before addressing that issue we believe that some clarification of the plain view doctrine is in order. The state argues that the presence of the marijuana baggies in plain view should dispose of this case, irrespective of whether the arresting officers unlawfully detained the defendants.

■ Under that interpretation of the plain view doctrine, it would not be necessary for the court to reach the issue of the constitutionality of the detention. We disagree. The plain view doctrine as we interpret it would not validate the seizure of evidence in plain view, if the plain view observation had its genesis in a Fourth Amendment violation. The issue of whether the detention was illegal is therefore dispositive of this case.

The plain view doctrine as set forth by the United States Supreme Court in *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) is that "objects falling in the plain view of an arresting officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." The plain view doctrine has been applied in cases in which officers standing on public property looked in car windows, *Nunez v. United States,* 370 F.2d 538 (5th Cir. 1967), or the windows of dwellings, *People v. Wright,* 41 Ill.2d 170, 242 N.E.2d 180 (1968), *cert. denied,* 395 U.S. 933, 89 S.Ct. 1993, 23 L.Ed.2d 448 (1969), and also when the observations were by officers while on defendant's property in the pursuit of legitimate business, *Ellison v. United States,* 93 U.S.App.D.C. 1, 206 F.2d 476 (1953).

■ The crucial issue on appeal then is whether the defendants were unlawfully detained after they produced their drivers' license. Only if the detention was lawful can the evidence be admitted under the plain view doctrine.

The state admits that the arresting officers did not have probable cause to arrest the defendants until they observed the marijuana baggies in the defendants' vehicle. The state relies on the investigative stop doctrine of *Terry v. Ohio,* 392 U.S. 1, 88

S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) to validate the detention. Police have traditionally followed the practice of stopping suspicious persons for purposes of questioning them or conducting some other form of investigation. Because this investigative technique is ordinarily employed when there are not grounds to make a formal arrest, it was often questioned whether the practice was consistent with the Fourth Amendment. *Terry* and *Adams* shed some light on this question.

In *Terry* a Cleveland detective with thirty-nine years of experience observed three men who appeared to be casing a store for a robbery. His suspicions aroused, he approached the three men, identified himself, and asked for their names. Receiving only a mumbled response, he searched the men and discovered that the two were carrying fully-loaded weapons. Both men were convicted of the offense of carrying a concealed weapon.

In upholding the defendants' convictions, ostensibly the majority declined to rule upon the constitutionality of an investigative stop. The Court limited its holding to the constitutionality of a search initiated pursuant to an investigative stop. Searches pursuant to an investigative stop were justified only when the investigative stop was motivated by the observation of unusual conduct which lead to the reasonable conclusion that criminal activity may be afoot.

"[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifie[d] himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover

weapons which might be used to assault him." 392 U.S. at 30, 88 S.Ct. at 1884. But as Justice Harlan observed in his concurring opinion, it appears that the Court approved investigative stops by implication because the conclusion that an officer was entitled to frisk for his own protection must necessarily be predicated upon the assumption that the officer was justified in creating the danger in the first instance by stopping the suspect for investigation. 392 U.S. at 32–33, 88 S.Ct. 1868.

The majority opinion itself, included several statements supporting the constitutionality of investigative stops. In speaking of the government's interest in effective crime prevention and detention the court said:

> "it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880.

At another point in the opinion, the court articulated the standard that should govern the legitimacy of investigative stops:

> "The police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion * * *. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of seizure or search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. at 21–22, 88 S.Ct. at 1880.

In any event, four years later in *Adams* the Supreme Court addressed the validity of an investigative stop as a distinct issue. In *Adams* a police officer was on patrol in a high crime area when an informer told him that an individual seated in a nearby vehicle was carrying narcotics and a gun at his waist. The officer decided to investigate the informant's tip. He approached the vehicle and asked the occupant to open the door. When the man rolled down the window, the officer reached into the car and removed a fully loaded gun from the occupant's waist. He was then arrested for unlawful possession of the hand gun, and a search incident to the arrest disclosed that he was carrying heroin. The defendant argued on appeal that in the absence of more reliable information, the investigative stop violated the defendant's Fourth Amendment rights. Citing *Terry,* the Court maintained that the investigative stop should be judged by the standard of reasonableness.

> "In *Terry* this Court recognized that a 'police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." 407 U.S. at 145–46, 92 S.Ct. at 1923.

Applying this standard to the facts in *Adams,* the Court concluded that although under prior decisions of the Court an unverified tip might have been insufficient to justify a formal arrest, it did justify the investigative stop.

In *State v. Hobson,* 95 Idaho 920, 503 P.2d 523 (1974), this Court had an opportunity to reflect upon the investigative stop doctrine of *Terry* and *Adams.* In that case we had to decide whether Hobson's Fourth Amendment rights were violated when police stopped him for questioning on the basis of an anonymous tip that he had drugs in his possession. We accepted the central thesis of *Terry* and *Adams* that police could constitutionally detain on grounds that fell

short of those required for a formal arrest. We followed the *Terry* approach of examining the reasonableness of the police conduct under the circumstances of the case. The specific standard which we applied was also derived from *Terry*—we held that in order for an investigative stop to be reasonable, the information initiating the stop must possess specificity and some indicia of reliability and the officer's conduct must be judged against the objective standard of whether facts available to the officer at the moment of search and seizure would warrant the reasonable belief that the action taken was appropriate.

In the present case, the arresting officers initially detained the defendants to check if they had violated the liquor laws. The trial court concluded and we agree that, given the defendants' youthful appearance, this phase of the detention satisfied the *Terry-Hobson* standard. We depart from the trial court here, however. Since defendant Allgood admitted the car was not his, we cannot say that the officers acted unreasonably in continuing the detention by requiring the defendant to produce his registration.

Nor do we feel bound by the trial court's conclusion on this point. Whether a detention is unreasonable, within the meaning of the Constitution is a question of law. A trial court's conclusion on such a point should not be lightly disregarded, but once review is sought the appellate court has the ultimate responsibility of measuring the facts as found by the trier against the constitutional standard of reasonableness. *People v. Gale,* 9 Cal.3d 788, 108 Cal.Rptr. 852, 511 P.2d 1204 (1973); *People v. Lawler,* 9 Cal.3d 156, 107 Cal.Rptr. 13, 507 P.2d 621 (1973).

The record contains undisputed testimony that the place where the defendants were detained was a high-crime area, that cases of auto theft were frequent, and cars stolen in neighboring Spokane often found their way into the general area. It is significant that the defendants were driving a vehicle registered in Washington. This fact, along with their admission that the car did not belong to them and their hurried exit from the vehicle upon the arrival of the arresting officers, justified the arresting officer's suspicion that the vehicle might be stolen. We hold under an appellate court's authority to make ultimate findings of law that the arresting officers did have justification for the detention and that their conduct was reasonable under the facts of the case. The detention did not violate the defendants' constitutional rights.

If the incriminating evidence was in plain view, the arresting officers could have seized it under the plain view doctrine. Contradictory testimony exists in the record as to whether the baggies *were* in plain view, however. The district court did not make a specific finding that the incriminating evidence was publicly visible and its treatment of the case does not convince us that it resolved this matter in favor of the state. By finding the detention illegal and by holding that the officers' presence by the defendants' vehicle was therefore illegal, the court was not required to determine if the marijuana baggies were in plain view. We therefore remand for this purpose.

We feel that one further observation is in order. The district court was theoretically correct in segmenting the police conduct and examining each phase of the detention. *Terry* clearly sets forth the proposition that an investigative stop cannot continue beyond the point when reasonable suspicions of criminal activity evaporate. 392 U.S. at 17–18, 88 S.Ct. 868. The Fourth Amendment places limitations upon the scope and intensity of police action as well as its initiation. In the present case the investigation was reasonably initiated on the suspicion of a liquor law violation and it reasonably continued when the possibility of auto theft emerged. We in no way imply that arresting officers have a carte blanche to detain suspects indefinitely once an investigative stop is validly commenced.

Reversed and remanded for proceedings consistent with this opinion.

**530**

SHEPARD and BISTLINE, JJ., and SCOGGIN, District Judge, Retired, concur.

BAKES, J., concurs in result.