661 P.2d 344

The STATE of Idaho,
Plaintiff-Respondent,

v.

Cary Gene BURGESS,
Defendant-Appellant.

No. 14304.

Court of Appeals of Idaho.

March 30, 1983.

Klaus Wiebe, Boise, for defendant-appellant.

James T. Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Neil L. Tillquist, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Justice.

Cary Burgess was convicted by a jury of attempted burglary and of possession of burglarious instruments. He appeals the denial of his motion to suppress evidence, arguing that the evidence was the product of an unconstitutional search. We hold that the search was reasonable within the meaning of the Fourth Amendment, and we affirm the order of the district court denying the suppression motion.

At approximately 3:00 a.m. on December 1, 1980, the Boise Police Department received a call from a private alarm company, informing them that detection systems at the Fireside Inn indicated that a burglary might be in progress. An audio alarm system, which monitored noise in and around the Fireside Inn, conveyed scraping sounds, scuffling and slight pounding noises. A separate alarm system indicated that apparently an attempt had been made to force a door open.

Upon receipt of this information, police officers Graybill and Field, who were parked in separate vehicles approximately four blocks away, immediately drove to the Fireside Inn. Upon their arrival, they observed the defendant, Cary Burgess, walking across the parking lot some twenty feet from the Fireside Inn building. Officer Graybill drove up to Burgess, got out of his car and inquired as to Burgess' identity and

the reason for his presence. Burgess gave his name, produced identification, which verified his identity, and stated that he was walking to his girl friend's house from an all night restaurant.

Noting that Burgess' purported path would have taken him past the location where the officers had been parked for the previous thirty minutes, Officer Graybill asked whether Burgess had observed any police cars parked along his route. Burgess answered in the negative. Following this conversation, which lasted for two to three minutes, Graybill frisked Burgess and discovered a small carpenter's nail puller, a pen light flashlight and a can of mace on Burgess' person. Burgess was subsequently arrested and charged with attempted burglary, a felony, and with possession of burglarious instruments, a misdemeanor. Following a jury trial, Burgess was convicted on both counts.

Burgess contends that his motion to suppress evidence—the mace, flashlight and nail puller—should have been granted because they were the products of a search which violated the Fourth Amendment proscription of unreasonable searches and seizures. He concedes that under the stop and frisk doctrine of Terry v. Ohio, 392 U.S. 1, 89 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the officer made a valid stop. Under Terry, if the stop is valid, the officer may frisk for weapons if he has a reasonable belief that the suspect is armed and the officer is concerned for his safety. See also Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

However, Burgess argues that an officer must be able to state with particularity the facts which lead him to conclude that the suspect is armed and dangerous in order to justify a frisk for weapons. If the officer cannot articulate such facts, the frisk is not permissible.

We acknowledge, as a general proposition, that a frisk is not permissible unless the officer can articulate, with particularity, facts which reasonably justify a frisk for weapons. See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Adams v. Williams, supra; Terry v. Ohio, supra. Our Supreme Court has previously applied this standard to measure the constitutionality of investigative stops. See State v. Post, 98 Idaho 834, 573 P.2d 153 (1978), rev'd on other grounds, State v. Bottelson, 102 Idaho 90, 625 P.2d 1093 (1981); State v. Allgood, 98 Idaho 525, 567 P.2d 1276 (1977); State v. Hobson, 95 Idaho 920, 523 P.2d 523 (1974). See also Mason v. State, Dept. of Law Enforcement, 103 Idaho 748, 653 P.2d 803 (Ct.App.1982).

Burgess contends that Officer Graybill's conduct in conversing with him for up to three minutes before frisking him, belied the officer's subsequent testimony that the frisk was for the purpose of checking for weapons. Thus, Burgess argues, the frisk was alleged to have been for the sole purpose of searching for evidence to provide probable cause for an arrest.

In support of his position, Burgess cites United States v. Kirsch, 493 F.2d 465 (5th Cir.1974); State v. Giltner, 56 Hawaii 374, 537 P.2d 14 (Hawaii 1975); State v. McDougall, 59 Hawaii 305, 580 P.2d 847 (Hawaii 1978); Commonwealth v. Pinney, 474 Pa. 210, 378 A.2d 293 (Penn.1977); Whitten v. U.S., 396 A.2d 208 (D.C.1978); People v. Dotson, 37 Ill.App.3d 176, 345 N.E.2d 721 (Ill.1976). In these cases, the facts as articulated did not justify a frisk for weapons. We believe these cases may be distinguished from the present case.

In Kirsch, supra, the defendant was stopped for driving in a suspicious manner. At trial, the officer stated that at no time was he in fear of life or limb, and he did not articulate any other reasons for believing that the defendant might be armed. In Giltner, and McDougall, police had no reason to believe criminal activity was occurring or imminent. Their frisks were based only on the knowledge that one of the several people involved in each case was a character known to the police or who was known as having been previously armed. In Dotson, a police officer sought to justify his frisk for weapons, by stating that Dotson had shifted his weight on his feet, had placed his hands in his pockets, and had

taken three steps backwards away from the officer. The court noted that no other justification was present and that the stop had occurred in winter weather. The court decided that Dotson's actions suggested not a reason for police suspicion but an individual trying to stay warm. In *Whitten,* the court held that a frisk for weapons of a suspected shoplifter was not reasonable where there was no evidence suggesting that the police officer was concerned about safety and the frisk entailed lifting one coat from the suspect's arm to reveal another coat which had just been stolen. Finally, in *Pinney,* the court found it unreasonable to frisk an individual who matched the description of a murder suspect only in that he was young, white, and had long hair. The court noted that there were no other facts which justified a search for weapons.

 In our view, all of the foregoing cases involve significantly fewer facts upon which the police could base a reasonable suspicion than are presented in this case. Here, police officers were investigating a serious crime believed to be in progress; they found an individual at the scene of the crime at 3:00 a.m.; and the individual gave a questionable account of how he happened to be there.

We turn now to the particular question whether the passage of two or three minutes, from Officer Graybill's first encounter with Burgess to the frisk, demonstrated that there was no reasonable suspicion that Burgess was carrying any weapons. The district court determined that this passage of time did not preclude suspicion about weapons. The state suggests that this determination is a finding of the trial court which must be upheld unless it is clearly erroneous. *See State v. Post, supra; State v. Spencer,* 74 Idaho 173, 258 P.2d 1147 (1953). However, both of those cases hold that whether voluntary consent to a search has been given is a question of fact, to be determined from the circumstances of each case. *Post, supra; Spencer, supra.* That is not the issue here.

 In *State v. Allgood,* 98 Idaho 525, 567 P.2d 1276 (1977), the Idaho Supreme

Court stated that the reasonableness of an investigative stop under *Terry,* is a question of law. While the trial court's conclusions should not be lightly disregarded, "the appellate court has the ultimate responsibility of measuring the facts as found by the trier [of fact] against the constitutional standard of reasonableness." 98 Idaho at 529, 567 P.2d at 1280. *See also State v. Hobson,* 95 Idaho 920, 523 P.2d 523 (1974). In our view, this same approach should be taken in analyzing the reasonableness of a frisk after the stop. Therefore, we must decide the ultimate question of the reasonableness of the police actions in this case, although we will take the facts as the district court found them.

In *Terry v. Ohio, supra,* the United States Supreme Court balanced the public's interest favoring a limited search for weapons— effective crime prevention and detection, protection of the police in the performance of their duties, and protection of the public during a stop and to investigate possible criminal activity—against the individual's constitutional right to protection from unreasonable searches and seizures. The court decided that

> ... [W]here ... in the course of investigating [suspected criminal activity, a police officer] identifies himself as a policeman *and makes reasonable inquiries* [of potential suspects], and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other's safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment .... [Emphasis supplied.]

392 U.S. at 30–31, 88 S.Ct. at 1884–85.

 In this case, as mentioned previously, the police had reason to suspect that Burgess may have been engaged in a burglary. It is not unreasonable to believe that burglars can be armed and dangerous. *State v. Nichols,* 26 Ariz.App. 455, 549 P.2d

235 (Ariz.Ct.App.1976). The fact that the police officer here delayed his frisk of Burgess for a few minutes, in order to make a reasonable inquiry of him, is not in itself a sufficient basis to find that a reasonable fear for his safety had been dispelled or that the search had become unreasonable. To decide otherwise would encourage a bias toward hasty police action—rather than considered inquiry—and might result in otherwise avoidable intrusions upon individual rights. In our view, the inquiry might confirm or enhance a police officer's initial suspicion, and thereby give rise to a reasonable apprehension concerning the officer's safety. In light of the circumstances of this case we find that the search was reasonable.

The decision of the district court, denying the motion to suppress the evidence resulting from the search, is upheld, and the judgments of conviction are affirmed.

SWANSTROM and BURNETT, JJ., concur.