IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 33986

| | | |
|---|---|---|
| IN THE MATTER OF JOHN DOE, A MINOR UNDER EIGHTEEN YEARS OF AGE. | ) ) ) | |
| STATE OF IDAHO, | ) ) | 2008 Opinion No. 57 |
| Plaintiff-Appellant, | ) ) | Filed: June 17, 2008 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| JOHN DOE, | ) ) | |
| Defendant-Respondent. | ) ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John R. Stegner, District Judge. Hon. Stephen L. Calhoun, Magistrate.

Order of the district court, on appeal from the magistrate, vacating decree that juvenile fell within the purview of the Juvenile Corrections Act, reversed and remanded.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for appellant. John C. McKinney argued.

Carmel A. McCurdy, Lewiston, for respondent.

_____

PERRY, Judge

The state appeals from an intermediate appellate order of the district court reversing the magistrate's decree that John Doe falls within the purview of the Juvenile Corrections Act (JCA) for possession of marijuana. Specifically, the state challenges the district court's order reversing the magistrate's denial of Doe's motion to suppress evidence. For the reasons set forth below, we reverse the order of the district court vacating the magistrate's decree and remand.

I.

FACTS AND PROCEDURE

In April 2006, a church employee contacted the police regarding two individuals who were looking in a window and appeared to possibly be attempting to gain access to the church.

1

Dispatch contacted several police officers and, around 9:45 p.m., four police officers arrived at the church. Two officers, in separate patrol cars, cornered two young individuals dressed in black. The officers ordered the two individuals to lie down on their stomachs and they complied. Several of the officers circled the church, and it was determined that the two individuals dressed in black were the ones seen by the church employee. One of those individuals was seventeen-year-old John Doe and the other was his sixteen-year-old friend.

After ordering the boys to the ground, one officer placed Doe in handcuffs while he was lying on the ground, and the other officer handcuffed Doe's friend. The officer who handcuffed Doe began to perform a pat-down frisk for weapons. However, when this officer heard the other officer reading Doe's friend his *Miranda* rights, the officer stopped the frisk and ordered Doe to listen to the *Miranda* warnings. After the *Miranda* warnings were completed, the officer resumed his pat-down frisk of Doe. This frisk led to the discovery of cigarettes and marijuana.

The state filed a petition alleging that Doe was a juvenile, had possessed marijuana in violation of I.C. § 37-2732(c)(3), and was therefore within the purview of the JCA. Doe filed a motion to suppress the marijuana and two admissions he made regarding his ownership. An evidentiary hearing was held before the magistrate. The officer who handcuffed Doe testified that, after he paused his frisk so Doe could hear the *Miranda* warnings, the officer felt a square box in Doe's front pocket. The officer testified that he immediately recognized the box as a cigarette package. The officer testified he asked Doe how old he was, and Doe responded that he was seventeen years old. The officer reached into Doe's pocket and removed the cigarettes and then asked Doe if he had anything else illegal on his person. Doe responded that he had marijuana in another pocket of his pants. The officer retrieved the marijuana from Doe's pocket. Doe admitted to the officer that the marijuana was his. Later at the police station, Doe again confessed that the marijuana was his.

The magistrate denied the motion to suppress and found Doe to be within the purview of the JCA for possession of marijuana. Doe appealed, and the district court reversed the magistrate and suppressed the marijuana and Doe's statements on the ground that the officer had no justification for the frisk which led to the discovery of marijuana. The state appeals.

2

## II.

## ANALYSIS

The state contends that the district court erred because that the officer who handcuffed Doe was justified in conducting a frisk of Doe's clothing for weapons. On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, ___ Idaho ___, 183 P.3d 758, 760 (2008). We review the magistrate's findings to determine whether they are supported by substantial and competent evidence. *Losser*, ___ Idaho at ___, 183 P.3d at 760.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct. App. 1999).

The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491 (1983); *Terry*, 392 U.S. at 30; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705. However, merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the

3

individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. *See also State v. Muir*, 116 Idaho 565, 567-68, 777 P.2d 1238, 1240-41 (Ct. App. 1989).

In this case, Doe concedes that the officer was justified in stopping him. The state argues that the officer was also justified in conducting a *Terry* frisk because the encounter occurred at night, the officers were responding to a possible burglary, Doe and his friend were dressed in black, and police had responded to a break-in or burglary report at the church one week prior to this incident.

Several jurisdictions have concluded that certain crimes, like burglary, by their very nature are so suggestive of the presence and use of weapons that a frisk is always reasonable when officers have a reasonable suspicion that an individual might be involved in such a crime. *See, e.g., United States v. Bullock,* 510 F.3d 342, 347 (D.C. Cir. 2007) (holding that "like burglary, car theft is a crime that often involves the use of weapons and other instruments of assault that could jeopardize police officer safety, and thus justifies a protective frisk under *Terry* to ensure officer safety"); *United States v. Barnett,* 505 F.3d 637, 640 (7th Cir. 2007) (concluding that burglary is "a crime normally and reasonably expected to involve a weapon"); *Brown v. State,* 684 P.2d 874, 879 (Alaska Ct. App. 1984) (recognizing that an officer "might well fear that someone suspected of burglary would carry a weapon and resort to violence"); *Quevedo v. State,* 554 So. 2d 620, 620 (Fla. Dist. Ct. App. 1989) (noting that "the mere fact that one, like Quevedo, is reasonably suspected of having committed a *burglary* in itself justifies a *Terry* pat-down and frisk for weapons"); *State v. Scott,* 405 N.W.2d 829, 832 (Iowa 1987) (holding that an officer investigating a burglary, especially in a residential area at an early morning hour, has reasonable cause to believe a frisk is necessary for officer safety because the suspect might be armed with weapons, or tools such as knives and screwdrivers, which could be used as weapons); *State v. Carter,* 707 P.2d 656, 660 (Utah 1985) (concluding that "a number of courts have held, and we agree, that a police officer may lawfully frisk a burglary suspect"); *Nelson v. Commonwealth,* 485 S.E.2d 673, 674-75 (Va. Ct. App. 1997) (noting that "where

4

burglary is the crime for which the suspect is lawfully detained, it is not unreasonable for the investigating officer to conduct a pat-down search to assure his or her safety as the investigation continues"). We note that the logic employed by these jurisdictions is consistent with *State v. Burgess*, 104 Idaho 559, 561, 661 P.2d 344, 346 (Ct. App. 1983) (holding that "it is not unreasonable to believe that burglars can be armed and dangerous").

*Terry* frisks of suspected burglars have been justified on two separate grounds. First, it is not unlikely that someone engaged in stealing another person's property would arm himself or herself against the possibility that someone will appear unexpectedly and object strenuously. *See People v. McGowan,* 370 N.E.2d 537, 540 (Ill. 1977). Second, in addition to the possibility that a burglar may be armed with a weapon, burglars tend to carry tools--such as knives, screwdrivers, hammers, and crowbars--that could be used as weapons. *See People v. Myles,* 123 Cal. Rptr. 348, 352-53 (Cal. Ct. App. 1975); *Carter,* 707 P.2d at 660.

Although we decline to adopt a bright-line rule that officers are automatically entitled to frisk every burglary suspect, we acknowledge that specific circumstances combined with certain crimes like burglary make it much more likely that a suspect will be armed and dangerous. In this case, the officers were responding to a possible burglary call at night. Officers responded to an incident only one week prior at this same church and found three individuals unlawfully inside the building. On this occasion, when the officers arrived they found the two suspects walking quickly away from the church. Both Doe and his friend were dressed all in black, indicating they may be trying to avoid being seen.[1]

At the hearing on Doe's motion to suppress, the officer who frisked Doe's friend testified regarding the special risks associated with investigating a possible burglary:

> You do not know the uhm exact location of the possible burglar as you're responding to the call. You don't know if they do have any type of weapons with them. You don't know what their mentality is, whether or not they're uh-- may be uhm under the influence of any alcohol or drugs or anything else. You don't know what their mental state is when you're responding to those calls.

Doe and his friend could have been in possession of burglary tools--screwdrivers, hammers, picks--that could easily have been used as weapons. Therefore, based on the facts of this case,

---

[1] We also note that factors which militate against a frisk discussed by our Supreme Court's opinion in *State v. Henage*, 143 Idaho 655, 661, 152 P.3d 16, 22 (2007)--a known, cooperative individual with no history of posing a danger toward the officers--are not present here.

we conclude that the officer was justified in conducting a *Terry* frisk of Doe's outer clothing for weapons.

Having determined that the officer was justified in conducting a *Terry* frisk of Doe for weapons, we must now determine whether the officer acted lawfully thereafter. The plain touch or plain feel exception to the warrant requirement may be invoked when, during the course of a *Terry* frisk for weapons, an officer feels an object whose contour or mass makes its identity "immediately apparent." *Minnesota v. Dickerson,* 508 U.S. 366, 375-76 (1993). If the object's identity as contraband is immediately apparent, an officer is justified in conducting a warrantless seizure of that object--i.e., removing the object from a suspect's pocket--on the basis of probable cause. *Id.* Because it is illegal for someone under the age of eighteen to possess cigarettes in Idaho, cigarettes in the hands of a minor are contraband. *See* I.C. § 39-5703.

In this case, the officer who frisked Doe testified at the suppression hearing that he felt the cigarette box in Doe's pocket and immediately recognized it as a cigarette pack. The officer testified that, before removing the cigarette pack from Doe's pocket, he asked Doe how old he was and Doe responded that he was seventeen.[2] Therefore, we conclude that the officer was justified in removing the contraband cigarettes from Doe's pocket.

The officer testified that, once he had retrieved the cigarettes from Doe's pocket, he asked if Doe had anything else illegal on his person. In response, Doe admitted that he had marijuana in his pocket. Based on Doe's response, the officer reached into Doe's pocket and removed the marijuana. We conclude that Doe's admission to possession of marijuana created probable cause for Doe's arrest and, therefore, the officer was justified in removing the marijuana from Doe's pocket as a search incident to arrest. *See State v. Johnson,* 137 Idaho 656, 662, 51 P.3d 1112, 1118 (Ct. App. 2002) (concluding that Johnson's "admission [to possession

---

[2]    During cross-examination, Doe's counsel read to the officer from the officer's police report. In that report, the officer noted that he felt what he immediately recognized as a cigarette pack during the *Terry* frisk of Doe. The officer's report provided that the officer then removed the cigarette pack because Doe did not look to be eighteen years old. Although we recognize the discrepancy between the officer's testimony that he first asked Doe his age before removing the cigarettes and his report stating that he removed the cigarettes because Doe did not appear to be eighteen, we conclude this factual distinction does not make a difference because the magistrate concluded the officer had reason to believe Doe possessed contraband and was therefore justified in removing the cigarettes from Doe's pocket.

of marijuana] created probable cause to arrest Johnson for possession of marijuana, and [the officer's] seizure of the bag of marijuana was therefore a valid search incident to a lawful arrest).

## III.

## CONCLUSION

Based on a response to a possible burglary, coupled with the facts of this case, we conclude the officer was justified in conducting a *Terry* frisk of Doe's outer clothing to search for weapons. The *Terry* frisk led the officer to the lawful discovery of cigarettes, which indirectly led to the lawful discovery of marijuana. Therefore, the intermediate appellate order of the district court reversing the magistrate's denial of Doe's motion to suppress and vacating the magistrate's decree that Doe fell within the purview of the JCA is reversed and this case is remanded to the magistrate to reinstate the decree and adjudication vacated by the district court.

Judge LANSING and Judge Pro Tem WALTERS, **CONCUR.**