**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 50850**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: January 31, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| ANTHONY LEE SAUCEDO, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Derrick J. O'Neill, District Judge.

Judgment of conviction for trafficking in methamphetamine, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

TRIBE, Judge

Anthony Lee Saucedo appeals from his judgment of conviction for trafficking in methamphetamine. Saucedo argues the district court erred by denying his motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Probation and Parole officers, Lee and Hamidovic, performed a compliance check at the home of a probationer. During that visit, the officers performed a search of the probationer's phone, which revealed text messages from "Anthony" and indicated the probationer was intending to purchase methamphetamine from "Anthony." The number was traced to Saucedo. One of the text messages from Saucedo indicated that he was with a person named "Amber." Upon checking

1

the probationer's phone, the officers located a phone number for "Amber" who was on probation. The officers went to Amber's home and were given permission by a supervisor to search the home.

Officer Lee knocked on the door of Amber's home and she opened the door. Upon entering the home, Officer Lee saw Saucedo sitting on a couch. Saucedo wore a necklace from which a knife hung. Officer Lee asked Saucedo to remove the knife from around his neck, exit the home, and go outside toward Officer Hamidovic. Saucedo complied. Officer Hamidovic then performed a pat search of Saucedo, which yielded a baggie of methamphetamine in his shirt pocket. A search of the home yielded a backpack with Saucedo's keys, methamphetamine, and drug paraphernalia. Although Saucedo originally denied the backpack belonged to him, he later admitted that the backpack and the methamphetamine were his. The methamphetamine weight from the backpack was a trafficking amount.

Saucedo was charged with felony trafficking in methamphetamine and misdemeanor possession of drug paraphernalia. Saucedo filed a motion to suppress the evidence obtained on his person and in the backpack. The district court denied the motion to suppress. Saucedo entered a conditional guilty plea to felony trafficking in methamphetamine Idaho Code § 37-2732B(a)(4)(A), reserving his right to appeal the denial of the motion to suppress. Saucedo appeals.[1]

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[1]     On appeal, Saucedo argues only that the methamphetamine obtained from inside of his shirt pocket was found in violation of his rights. Saucedo has not challenged the discovery of the methamphetamine in his backpack.

2

## III.

## ANALYSIS

Saucedo argues the district court erred in denying his motion to suppress. Specifically, Saucedo contends the officer exceeded the scope of a permissible *Terry*[2] frisk and a subsequent search inside Saucedo's shirt pocket was not permissible under the plain-feel doctrine, thus he argues that his rights under the Fourth Amendment were violated.[3] The State responds that the district court properly found the officer had a reasonable belief that Saucedo was armed and dangerous justifying the initial external frisk and the plain-feel doctrine justified the officer entering and removing the contents of Saucedo's shirt pocket.

### A.     *Terry* **frisk**

Saucedo argues that the district court erred in concluding that the initial *Terry* frisk was legal because the totality of the circumstances known to the officer at the time of the frisk did not lead to the conclusion that Saucedo posed a safety risk. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct. App. 1999).

Saucedo does not challenge the legality of the stop. However, merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person

---

[2]     *See Terry v. Ohio*, 392 U.S. 1 (1968).

[3]     Saucedo acknowledges that no argument was presented in the district court in his motion to suppress regarding his rights pursuant to Article 1 § 17 of the Idaho Constitution. Therefore, Saucedo does not raise a state constitutional claim on appeal.

to believe that the individual may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787.

Saucedo argues that the district court's conclusion relied solely on the finding that, upon their arrival in the home, the officers saw a knife hanging from Saucedo's neck. The State argues that the district court properly denied the motion to suppress because the *Terry* frisk was lawful given all the information known to the officers at the time of the frisk. The State argues that the information known to the officers included the "text messages from Saucedo indicating that he was currently in possession of methamphetamine and looking to sell it, a search of a different probationer's trailer that took place late in the evening, and that Saucedo was wearing a knife around his neck."[4]

Our inquiry is to determine whether it was objectively reasonable for the officer to conclude a pat down search was necessary for the protection of himself or others. *State v. Henage*, 143 Idaho 655, 661, 152 P.3d 16, 22 (2007). "[W]here nothing in the initial stages of the encounter serves to dispel [the officer's] reasonable fear for his own or others' safety," the officer is entitled to "conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons." *Terry*, 392 U.S. at 30.

In *Henage*, the Idaho Supreme Court reviewed whether an officer was justified in a pat-down search, after the original purpose for the traffic stop was completed, because the individual subject to the frisk told the officer he had a knife and appeared nervous. The district court found that those facts and the officer's testimony, that "once a person tells me they're in possession of a weapon, it compromises my safety," sufficiently justified the search. *Henage*, 143 Idaho at 662, 152 P.3d at 23. The Idaho Supreme Court held that the presence of a knife, by itself, does not present a safety risk when there is no objective indication that an individual posed a threat.

---

[4] Saucedo emphasizes that the officer admitted he did not know the difference between a pat search and a full search. However, the officer's understanding of the difference is not instructive of whether the frisk violated the Fourth Amendment.

4

*Id.* The Court further held that the officer's generalized statements of a feeling of concern for safety did not inform the objective analysis and the safety concerns were not particularized to the facts present with this particular individual with whom the officer was familiar and had a cordial relationship. *Id.* at 661, 152 P.3d at 22.

After *Henage*, the Idaho Supreme Court provided a nonexhaustive list of factors that could influence whether a reasonable person in the officer's position would believe that a particular individual was armed and dangerous. *State v. Bishop*, 146 Idaho 804, 819, 203 P.3d 1203, 1218 (2009). These factors include:

> [W]hether there were any bulges in the suspect's clothing that resembled a weapon; whether the encounter took place late at night or in a high crime area; and whether the individual made threatening or furtive movements, indicated that he or she possessed a weapon, appeared nervous or agitated, appeared to be under the influence of alcohol or illegal drugs, was unwilling to cooperate, or had a reputation for being dangerous.

*Id.* Any single factor could be sufficient to justify a *Terry* frisk under the totality of the circumstances standard. *Bishop*, 146 Idaho at 819, 203 P.3d at 1218; *see State v. Saldivar*, 165 Idaho 388, 392, 446 P.3d 446, 450 (2019).

Although the district court's analysis highlighted Saucedo's possession of a knife as justification for a *Terry* frisk, it made other findings relevant to the analysis. In particular, the district court found that Saucedo sent a text message to Amber and "wanted to sell methamphetamine" and that the search of Saucedo occurred in the evening in the context of a search of a probationer's home. Under *Henage*, the district court's analysis relied too heavily on the mere presence of the knife.

We conclude, however, that a reasonable person in the officer's position would believe that a particular individual was armed and dangerous under an objective view of the totality of the circumstances. Similar to the officer in *Henage*, Officer Hamidovic knew Saucedo possessed a knife. Unlike in *Henage*, Officer Hamidovic had no known previous interactions with Saucedo such that the officer could be assured that Saucedo did not pose a threat. Also, unlike the officer's unparticularized statement in *Henage*, the officer testified that he performed a pat-down search of Saucedo due to safety concerns that were present at the time of the search. Further, unlike *Henage* where the officers performed a *Terry* frisk following a routine traffic stop, here the officers were

at the home of a known methamphetamine user with information that Saucedo was planning to sell methamphetamine. Therefore, upon the first encounter with Saucedo, Officer Lee knew they were "possibly going to be finding some criminal activity or suspicious behaviors" unlike what would be expected from a routine traffic stop where the officer's only reason for the stop is a traffic violation.

Saucedo has failed to show the district court erred in concluding that it is objectively reasonable for a person in the same situation as Officer Hamidovic, with all the facts mentioned, to perform a *Terry* frisk for the safety of himself and others.

**B.** **Plain-Feel Exception**

Saucedo argues that, even if the *Terry* frisk was justified, a further intrusion into his shirt pocket was not supported by sufficient evidence to demonstrate that the officer felt an object that was immediately identifiable as contraband. Saucedo argues that the officer had a mere hunch which is insufficient to warrant the intrusion. The State argues that the district court correctly found that the officer was justified in removing the methamphetamine from Saucedo's shirt pocket because Officer Hamidovic testified to being familiar with methamphetamine, that it felt like "little rocks," and to seeing the text messages from Saucedo earlier in the day that indicated he had methamphetamine.

The plain-touch or plain-feel exception to the warrant requirement applies when, during the course of a *Terry* frisk for weapons, an officer feels an object whose contour or mass makes its identity as contraband immediately apparent. *State v. Doe*, 145 Idaho 980, 984, 188 P.3d 922, 926 (Ct. App. 2008). If the object's identity as contraband is immediately apparent, an officer is justified in conducting a warrantless seizure of that object by removing the object from a suspect's pocket on the basis of probable cause. *Id*.

Saucedo argues that the district court erred and points to the preliminary hearing where Officer Hamidovic testified that the object "felt like a baggy with a pebble-like substance." However, Officer Hamidovic clarified at the motion to suppress hearing that the pebble-like feeling made it immediately apparent to him that the object was methamphetamine due to his previous experience feeling methamphetamine and holding a baggie of methamphetamine. Saucedo has failed to show the district court erred in denying his motion to suppress the evidence found in his shirt pocket.

6

## IV.

## CONCLUSION

Because the initial frisk was a lawful *Terry* frisk and the subsequent search inside Saucedo's shirt pocket was justified under the plain-feel doctrine, the district court did not err in denying Saucedo's motion to suppress. Therefore, Saucedo's judgment of conviction for trafficking in methamphetamine is affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.