## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46361

| | | |
|---|---|---|
| STATE OF IDAHO,<br><br>    Plaintiff-Respondent,<br><br>v.<br><br>GARY JAMES PYLICAN,<br><br>    Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Filed: March 19, 2021<br><br>Melanie Gagnepain, Clerk<br><br>THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

Judgment of conviction for possession of a controlled substance and being a persistent violator, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

Gary James Pylican appeals from his judgment of conviction for possession of a controlled substance and being a persistent violator. Pylican argues the district court erred in denying his motion to suppress because reasonable suspicion did not support the traffic stop. Because reasonable suspicion supported the traffic stop, the district court did not err in denying Pylican's motion to suppress, and the judgment of conviction is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 11:55 p.m., Deputy Geisel was on patrol and parked near a local storage facility when a car caught his attention. The car drove past Deputy Geisel and pulled up to the gate of the storage facility. Although the storage facility's posted hours stated that it closed at 10:00 p.m., the car nonetheless gained access to the facility. Deputy Geisel considered this

1

behavior to be suspicious and was concerned that individuals might be stealing from storage units as the police department had received numerous calls reporting thefts and burglaries in the area. Deputy Geisel called for assistance.

Deputy DeLeon responded to the request for assistance and arrived at the storage facility. The deputies continued to watch the storage facility, and Deputy DeLeon observed multiple people within the facility, including Pylican and his wife, Jennie.[1] The deputies approached the storage facility on foot to question the individuals, but returned to their patrol cars because of concerns that the individuals were about to drive out of the facility. Pylican got into a truck and Jennie got into a car and both exited the storage facility, turning in two different directions. Deputy DeLeon followed Pylican's truck while Deputy Geisel followed and stopped Jennie's car. Pylican stopped his truck in an adjacent dirt parking area serving a nearby apartment complex, parking against traffic and slightly within the lane of travel. Deputy DeLeon activated the patrol car's overhead lights effecting the traffic stop.

By the time Deputy DeLeon approached, the driver, Pylican, had already exited the truck. Deputy DeLeon asked Pylican about his after-hours presence in the storage facility. Pylican explained that he had been moving items from one storage unit to another and he was allowed to be at the facility after closing because he entered before 10:00 p.m.[2] Deputy DeLeon procured Pylican's identification, vehicle registration, and insurance. Pylican's passenger, Bryan Mussaw, did not have identification but told Deputy DeLeon his name and that there was a warrant out for his arrest.

---

[1] Some of the facts noted above are also set forth in *State v. Jennie Pylican*, 167 Idaho 745, 477 P.3d 180 (2020), a case arising from Jennie's presence in the storage facility. On appeal, Pylican argues that absent any explicit factual findings by the district court in his case, this Court cannot rely on or take judicial notice of any of the facts found in Jennie's case to either support the district court's reasoning or affirm the district court's conclusion in this case. This argument misses the mark. The facts set forth above were testified to by both deputies during the suppression hearing in Pylican's case. The Supreme Court held that the presence of Jennie in the storage facility after hours was sufficiently dubious such that the officers' suspicion of criminal activity was reasonable. This Court need not take judicial notice of the facts in Jennie Pylican's case to cite to the case and explain how nearly identical facts lead to similar conclusions.

[2] Jennie similarly testified that she had been moving property between storage units with her husband and that she had permission to be in the storage facility after hours as long as she was in before 10:00 p.m. *Jennie Pylican*, 167 Idaho at 745, 477 P.3d at 184.

2

Deputy DeLeon called dispatch with Pylican's and Mussaw's information to perform routine checks and confirm the validity of Mussaw's arrest warrant. Dispatch conveyed that Mussaw had an executable arrest warrant and Pylican had no outstanding warrants or problems with his driver's license or registration. However, dispatch also relayed that there was an "officer safety caution" associated with Pylican due to the nature of his criminal history. Because of the documented officer safety caution, Deputy DeLeon decided to search Pylican for weapons while another officer executed Mussaw's arrest warrant. Pylican consented to a search for weapons and, when asked, gave Deputy DeLeon permission to remove items from his pockets. Deputy DeLeon removed a bundle of money from one of Pylican's pockets and found a bag containing a white crystalline substance within the bills. Deputy DeLeon placed Pylican under arrest.

The State charged Pylican with felony possession of a controlled substance and with being a persistent violator. Pylican filed a motion to suppress the methamphetamine, alleging, in part, that Deputy DeLeon lacked reasonable suspicion to initiate the traffic stop. In response, the State argued that Deputy DeLeon had reasonable suspicion that Pylican: (1) was stealing from storage units while being at the storage facility after hours; (2) violated a county ordinance prohibiting disorderly conduct; (3) committed a traffic violation by failing to activate his turn signal upon exiting the storage facility; (4) committed a traffic violation by failing to activate his turn signal when he pulled over to park; and (5) committed a traffic violation by parking on the wrong side of the road and obstructing traffic.

After a suppression hearing, the district court denied Pylican's motion to suppress. The district court declined to make factual findings related to Pylican's failures to activate his turn signal and determined that Deputy DeLeon lacked reasonable suspicion that Pylican was stealing from the storage units. However, the district court found that there was reasonable and articulable suspicion that Pylican's presence in the storage facility after hours violated a county ordinance prohibiting disorderly conduct and that Pylican parked illegally after exiting the storage facility.

Pylican entered a conditional guilty plea to both charges, reserving the right to appeal the district court's denial of the motion to suppress. Pylican timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by

3

substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Pylican argues the district court erred in denying his motion to suppress because Deputy DeLeon did not have reasonable, articulable suspicion that he violated a county ordinance prohibiting disorderly conduct or committed a traffic violation prior to the stop. In response, the State contends that Deputy DeLeon had reasonable suspicion that Pylican violated the county ordinance and committed a traffic violation by parking illegally. Alternatively, the State argues the district court erred by rejecting the argument that Deputy DeLeon had independent, reasonable suspicion to stop Pylican to investigate whether he engaged in criminal activity, like burglary or theft, at the storage facility.

The State presented the district court with multiple arguments in support of the traffic stop, including an argument that the officers had reasonable suspicion of criminal activity based on Pylican's after-hours presence at the storage facility. Ultimately, the district court denied Pylican's motion to suppress. This Court can affirm the district court based on an argument presented to the district court. *See State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019). Because Deputy DeLeon had reasonable suspicion to initiate the traffic stop based on Pylican's after-hours presence in the storage facility, we affirm the denial of the motion to suppress.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws, *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998), or that either the vehicle or the occupant is subject to detention in connection with a violation of other law. *State v. Rader*, 135 Idaho 273, 275, 16 P.3d 949, 951 (Ct. App.

4

2000). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). "Whether an officer had the requisite reasonable suspicion to detain a citizen is determined on the basis of the totality of the circumstances--the collective knowledge of all those officers and dispatchers involved." *State v. Baxter*, 144 Idaho 672, 678, 168 P.3d 1019, 1025 (Ct. App. 2007); *see also State v. Widner*, 155 Idaho 840, 844, 317 P.3d 737, 741 (Ct. App. 2013); *State v. Van Dorne*, 139 Idaho 961, 964, 88 P.3d 780, 783 (Ct. App. 2004).

"When gauging whether information known to an officer justified reasonable suspicion, we consider the totality of the circumstances rather than viewing individual facts in isolation." *State v. Kelley*, 159 Idaho 417, 424, 361 P.3d 1280, 1287 (Ct. App. 2015). Not every suspicious or abnormal behavior is sufficient to establish reasonable suspicion. *State v. Bly*, 159 Idaho 708, 711, 366 P.3d 193, 196 (Ct. App. 2016). For example, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). However, while conduct might be innocently explained, reasonable suspicion need not rule out the possibility of innocent conduct, *Navarette v. California*, 572 U.S. 393, 403 (2014), and "innocent acts, when considered together, may be suspicious enough to justify an investigative detention if an officer points to articulable facts that the individual is engaged in criminal activity." *State v. Gonzales*, 165 Idaho 667, 674, 450 P.3d 315, 322 (2019).

In *State v. Jennie Pylican*, 167 Idaho 745, 753, 477 P.3d 180, 188 (2020), the Idaho Supreme Court found reasonable suspicion existed to support a traffic stop to question Jennie about her after-hours presence at the same storage facility and at the same time that Pylican was present at the storage facility. *Id.* Although the storage facility closed at 10:00 p.m., Deputy Geisel witnessed Jennie enter the facility after hours when she drove through the gates close to midnight. *Id.* at 748, 477 P.3d at 183. Deputy Geisel did not observe Jennie engage in any criminal activity inside the storage facility during the approximately thirty-five minutes that she was inside. *Id.* at 749, 477 P.3d at 184. However, Deputy Geisel had previously seen others try, and fail, to gain

5

access to the facility after hours, and the area in which the facility was located had recently experienced a high number of calls regarding property crimes. *Id.* at 748, 477 at 183. Upon exiting the facility, Jennie failed to use a turn signal and Deputy Geisel initiated a traffic stop for the traffic violation and to investigate Jennie's presence in the storage facility after hours. *Id.* at 749, 477 at 184. Despite Deputy Geisel witnessing her enter the storage facility close to midnight, Jennie told the deputy that she entered prior to 10:00 p.m. *Id.* A drug-dog was deployed and alerted on Jennie's car; deputies found methamphetamine and drug paraphernalia during subsequent searches of the car. *Id.*

The Idaho Supreme Court held that the facts known to Deputy Geisel at the time of the stop gave rise to reasonable suspicion of Jennie's engagement in criminal activity in the storage facility. These facts included that the area had a high number of reports of property crimes, despite the facility's mechanisms to keep individuals out after hours; Jennie entered approximately two hours after it closed; and Deputy Geisel had seen others try, and fail, to gain access to the storage facility after hours. *Id.* at 752, 477 P.3d at 187.

In Pylican's case, the district court found that: (1) shortly after midnight, Deputies DeLeon and Geisel saw some people in a storage unit facility; (2) a posted sign stated that the facility closed at 10:00 p.m.; (3) given the time, the deputies considered the peoples' presence at the facility to be suspicious; and (4) the deputies were concerned that the people may be stealing from storage units. However, the district court determined that the concern about potential theft from the storage units was a hunch; thus, there was not reasonable and articulable suspicion to stop Pylican on this basis. The Supreme Court's opinion in *Jennie Pylican*, issued after the district court's decision in this case, compels a contrary conclusion.

Although the district court judge in each case may have emphasized different facts in finding that there was no reasonable suspicion of criminal activity inside the storage facility to justify the subsequent stop in each case on that basis, there is no material distinction between the facts in the instant case and the facts in *Jennie Pylican*. Here, like in *Jennie Pylican*, the deputies witnessed individuals inside of a storage facility nearly two hours after the facility closed. The deputies found this behavior to be suspicious; it was late at night, there had been a high-number of property crimes reported in the area, and a car gained access to the storage facility hours after it closed. The officers in this case testified that their office had received a lot of service calls from the area in which the storage facility was located and the calls generally concerned burglaries and

6

thefts; as a result, the patrol team discussed doing extra rounds in the area. Further, Deputy Geisel testified that he saw a car gain access to the facility around midnight, after the facility had closed, and this made him suspicious that the individuals were committing a criminal act inside. Also, like in *Jennie Pylican*, although the deputies did not witness Pylican commit crimes while in the storage facility, the district court found that, given the time, the officers nonetheless believed his behavior to be suspicious.

The only differing fact between Pylican and Jennie's presence at the storage facility is that Pylican was already in the facility and Jennie was seen entering the facility. While it is also true that, unlike Jennie, Pylican did not lie to Deputy DeLeon about when he entered the storage facility, this is not a material distinction--Jennie's falsehood occurred during a discussion with the deputy during the traffic stop, which was *after* the deputy had formed a reasonable suspicion of criminal activity based on Jennie's presence in the storage facility. Therefore, Jennie's lie could not have been a factor for the deputy in developing reasonable suspicion to initiate the stop because of Jennie's after-hours presence in the storage facility. *See id.* ("accepting the district court's findings as true, we respectfully disagree with its legal conclusion that the deputy lacked reasonable suspicion to stop [Jennie] and question her regarding her presence in the storage facility"). Thus, because in *Jennie Pylican* the Idaho Supreme Court found that Jennie's after-hours presence at the storage facility was a legitimate basis for the traffic stop and there is no material factual distinction between that case and this case, this Court concludes that Deputy DeLeon had reasonable, articulable suspicion to stop Pylican to question him about his after-hours presence in the storage facility.

Although we have held that Pylican's after-hours presence in the storage facility provided reasonable suspicion, we also agree with the district court that Deputy DeLeon had reasonable, articulable suspicion that Pylican's presence in the storage facility after hours violated a county ordinance prohibiting disorderly conduct and that Pylican parked illegally after exiting the storage facility.

In regard to the disorderly conduct ordinance, the district court held that a "county ordinance in force where the storage facility is located prohibits '[o]ccupying . . . any . . . place, whether public or private . . . without the permission of the owner or the person entitled to the possession or in control thereof.' Ada County Code § 5-4-4(C)." The district court held that Deputy DeLeon had reasonable suspicion that Pylican occupied a private place without permission

7

of the owner by being inside the storage facility after hours. On appeal, Pylican first argues that the State failed to prove the existence of the ordinance. However, the existence of the ordinance was not in dispute and this Court has held that where an ordinance's existence is not reasonably in dispute, then it may be accepted as evidence by judicial notice, whether requested or not and at any time in the proceeding. *State v. Doe*, 146 Idaho 386, 389, 195 P.3d 745, 748 (Ct. App. 2008). Next, Pylican testified at the hearing that a storage unit employee told him he could be in the storage unit 24 hours a day, thereby altering the written contract limiting access to "hours of operation." Despite this assertion, Pylican did not claim that the officer who stopped him had knowledge of such alleged permission in the context of the reasonable suspicion analysis. An officer's suspicion "is evaluated based on the totality of the circumstances known to the officer at or before the time of the stop." *State v. Perez*, 164 Idaho 626, 629, 434 P.3d 801, 804 (2009). Finally, Pylican argues that the term "occupied" in the ordinance is akin to residing in or taking over a place for a period of time. However, the term "occupied" means, among other definitions, "to take up (a place or extent in space)," Merriam-Webster Online Dictionary (3/15/21) https://www.merriam-webster.com/dictionary/occupy, without reference to an amount of time. Using that definition, Pylican took up a place at, or occupied, the storage facility without permission of the owner.

Pylican does not dispute the district court's factual finding that he parked "the truck at something of an angle on the highway's left-hand side," contrary to Idaho Code § 49-661(1). Pylican's principal argument on appeal is that the officer had already determined to stop him before he parked his truck. However, the officer's subjective determination to effectuate a stop based on reasonable suspicion of other wrongful conduct does not negate reasonable suspicion for wrongful conduct occurring after that subjective decision. As noted, reasonable suspicion is based on the totality of the circumstances known at or before the time of the stop. A seizure does not occur until the person submits to the authority exhibited by the officer. *State v. Pick*, 124 Idaho 601, 604, 861 P.2d 1266, 1269 (Ct. App. 1993). Pylican illegally parked his truck before the officer activated the patrol car's overhead lights, thus providing an additional basis for the stop. Pylican has shown no error in the district court's holding that Deputy DeLeon had reasonable, articulable suspicion that Pylican's presence in the storage facility after hours violated a county ordinance prohibiting disorderly conduct and that Pylican parked illegally after exiting the storage facility.

## IV.
## CONCLUSION

Independent, reasonable suspicion regarding Pylican's after-hours presence in the storage facility supported the traffic stop. Reasonable suspicion also existed on the grounds that Pylican's presence in the storage facility after hours violated a county ordinance prohibiting disorderly conduct and that Pylican parked illegally after exiting the storage facility. Accordingly, the district court did not err in denying Pylican's motion to suppress and the judgment of conviction is affirmed.

Judge GRATTON and Judge LORELLO **CONCUR**.