# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45351

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, December 2018 Term |
| | ) | |
| v. | ) | Opinion filed: February 8, 2019 |
| | ) | |
| AUGUSTINE GARNICA PEREZ, JR., | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County, Hon. Darren B. Simpson, District Judge.

The judgment of the district court is affirmed.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Kim A. Coster argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kenneth K. Jorgensen argued.

_____

HORTON, Justice.

Augustine Garnica Perez Jr. appeals from his judgment of conviction for felony DUI. He challenges the district court's decision denying his motion to suppress evidence gathered as a result of an investigatory stop. Specifically, he argues that the district court erred in concluding that information provided by a citizen during a call to dispatch was sufficient to create the reasonable, articulable suspicion necessary to justify the stop. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the district court's denial of Perez's motion to suppress evidence gathered during an investigatory stop that led to his conviction for felony DUI. The basis for the stop was a call made to dispatch by an identified citizen. During the day that the dispatch call was made, an Indian Highway Safety Officer, Officer Henry, had driven through a neighborhood in the Old Fort Hall housing complex and noticed a white, two-door Mercedes parked on a street

named Wardance Circle.[1] He noted the vehicle because Mercedes vehicles were rare in that area and he had never seen a white Mercedes in that neighborhood in his three years as a highway safety officer.

Later, around 10:30 that evening, a woman who lived on Wardance Circle called dispatch and described a white Mercedes with a driver who seemingly "didn't know how to drive it, 'cause it kept trying to go in drive, and then it couldn't, but like it's a standard or something." She said that once the driver was able to get the car moving, it pulled into a driveway and almost hit the back of a parked car. The driver then drove out of Wardance circle, "turned east, and went toward the bingo hall." When asked how long ago the driver had left, the caller said "[n]ot even five minutes ago." She also stated that the driver had been slamming on the car's brakes earlier in the day and "roaring around," and that the car was recently "roaring its motor, like it wanted to race."

The caller noted that she had seen an officer earlier in the day and told him that "a native guy" was driving the car, that he was "driving really recklessly," and that she was concerned that he might drive up on the sidewalk and hit neighborhood children.

Officer Henry was dispatched to investigate the call. Officer Henry testified that he first went to Wardance Circle where he had seen the white Mercedes earlier in the day and that it was no longer there. He then drove to the nearby casino, gas station, trading post, and then to the two main roads looking for the vehicle. As he was driving on one of the main roads, he came upon a white, two-door Mercedes traveling in the opposite direction. He estimated that it took him three to four minutes after receiving the call from dispatch to arrive at Wardance Circle and that from there he drove for "five, ten minutes" before he came upon the white Mercedes driving on the main road. In total, approximately ten to fifteen minutes passed between the time of the call to dispatch and the time that Officer Henry stopped the Mercedes.

Officer Henry stated that he did not observe any violations of the law or erratic driving while following the vehicle; however, he only followed it for less than a minute before he initiated the stop. When he contacted the driver—Perez—he immediately noticed the smell of alcohol and called an Idaho State Police officer to investigate for DUI. The ISP officer administered field sobriety tests and then arrested Perez. Perez was subsequently charged with

---

[1] Although Wardance Circle is on a reservation, the motor vehicle laws of the State of Idaho apply in this case pursuant to Idaho Code section 67-5101G.

felony DUI, driving without a license, and failing to carry insurance, with a persistent-violator enhancement to the felony charge.

Perez moved to suppress the evidence resulting from the stop, arguing that the stop violated his constitutional rights because Officer Henry did not have reasonable, articulable suspicion that he had violated any traffic laws. The district court denied Perez's motion to suppress in a ruling from the bench. The district court held that the conduct reported by the caller created reasonable suspicion that the crime of reckless driving had been committed and the caller's description of the vehicle provided reasonable suspicion for Officer Henry to stop the white Mercedes that Perez was driving.

Perez then entered a conditional plea, reserving the right to appeal the denial of his motion to suppress. Thereafter, he timely appealed.

## II.   STANDARD OF REVIEW

> In reviewing a district court order granting or denying a motion to suppress evidence, the standard of review is bifurcated. This Court will accept the trial court's findings of fact unless they are clearly erroneous. However, this Court may freely review the trial court's application of constitutional principles in light of the facts found.

*State v. Jaskowski*, 163 Idaho 257, 259, 409 P.3d 837, 839 (2018) (quoting *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009) (citations omitted)). Thus, "[d]eterminations of reasonable suspicion are reviewed de novo," while findings of fact that support a determination of reasonable suspicion are reviewed for clear error. *State v. Morgan*, 154 Idaho 109, 111, 294 P.3d 1121, 1123 (2013).

## III.   ANALYSIS

Perez argues that the investigatory stop violated his constitutional right to be free from unreasonable searches and seizures because the call to dispatch did not provide the officer with reasonable suspicion to justify the stop of his vehicle.

"The Fourth Amendment's reasonableness requirement has been held to apply to brief investigatory detentions." *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). Under the Fourth Amendment, "limited investigatory detentions, based on less than probable cause, are permissible when justified by an officer's reasonable articulable suspicion that a person has committed, or is about to commit, a crime." *Id*. "Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts." *Id.* "Although it must be more than a mere hunch,

3

the level of suspicion required to create a reasonable suspicion is less than is necessary for probable cause and considerably less than proof by a preponderance of the evidence." *State v. Russo*, 157 Idaho 299, 305, 336 P.3d 232, 238 (2014). Further, while conduct might be explained by another cause, the Supreme Court of the United States has "consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.' " *Navarette v. California*, 572 U.S. 393, 403 (2014) (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)). Finally, "[w]hether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer at or before the time of the stop." *Bishop*, 146 Idaho at 811, 203 P.3d at 1210.

    1.    <u>The call to dispatch supported Officer Henry's reasonable suspicion that the driver committed the crime of reckless driving</u>.

Perez argues that the only act that could have led to reasonable suspicion that the driver was driving recklessly occurred on private property and therefore does not fall within the reckless driving statute (Idaho Code section 49-1401(1)).[2] We hold that the district court did not err in finding that Officer Henry had reasonable suspicion that the driver committed the crime of reckless driving as defined by Idaho Code section 49-1401(1).

Pursuant to Idaho Code section 49-1401(1):

> Any person who drives or is in actual physical control of any vehicle upon a highway, or upon public or private property open to public use, carelessly and heedlessly or without due caution and circumspection, and at a speed or in a manner as to endanger or be likely to endanger any person or property, or who passes when there is a line in his lane indicating a sight distance restriction, shall be guilty of reckless driving . . . .

According to the statute, a person may be guilty of reckless driving if his conduct on a public road endangers or is likely to endanger persons or property. The plain language of the statute does not limit the location of the persons or property that are potentially at risk to those on public property—instead, it includes driving "at a speed or in a manner as to endanger or be likely to endanger *any* person or property . . . ." Idaho Code section 49-1401(1) (emphasis added). Thus, although the danger or likely danger to persons or property must originate with the driver's conduct on public property or private property open to public use, the statute does not preclude a determination of reckless driving where the driver's conduct on public property endangers people or property located exclusively on private property.

---

[2] Perez did not contest the reliability of the identified citizen-informant on appeal.

In this case, Perez asserts that the act that led the district court to conclude that reckless driving may have occurred took place solely on private property and therefore does not qualify under the statute. Although the facts of this case do not indicate the manner in which Perez was driving immediately before entering the private driveway, driving into another's driveway from a public roadway and almost hitting a car could indicate reckless driving on the public road. *See Navarette*, 572 U.S. at 403 (quoting *Arvizu*, 534 U.S. at 277) ("reasonable suspicion 'need not rule out the possibility of innocent conduct.' "). As a result, even if this was an isolated incident and possibly caused by innocent conduct, it provided reasonable suspicion to stop Perez and investigate whether he committed the crime of reckless driving.

Further, the caller described other behavior that could lend itself to reasonable suspicion that reckless driving occurred. *See Bishop*, 146 Idaho at 811, 203 P.3d at 1210 ("Whether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances...."). Contrary to Perez's assertion, the caller did not describe an isolated incident of driving onto a private driveway. She asserted to dispatch that earlier in the day, the driver was "roaring around," slamming on his brakes, "driving really recklessly," and that she was afraid that he would drive up onto the sidewalk and injure a neighborhood child. This description of behavior earlier in the day, in addition to the description of the driver almost hitting the car in the private driveway that evening, provided specific, articulable facts, and a rational inference therefrom is that the crime of reckless driving may have been committed.

Thus, we find that the call to dispatch provided the reasonable suspicion necessary to investigate whether the crime of reckless driving occurred.

2.    The officer had reasonable suspicion that the vehicle Perez was driving was the same vehicle involved in the suspected reckless driving.

Perez argues that Officer Henry stopped him based solely on the make and color of his vehicle and that those characteristics were not sufficient to create reasonable suspicion that he committed the crime of reckless driving.

Perez compares this case to *State v. Zapata-Reyes* in which the Court of Appeals stated:

> [T]he caller here described a car of a common color—white—and provided no other significant distinguishing features. The description was therefore not of a vehicle that was easily distinguishable from other vehicles. No evidence was presented to show whether the Oldsmobile that Zapata–Reyes occupied bore a resemblance to any Corsicas or Buicks. Moreover . . . the caller indicated that there were three or four occupants in the vehicle that passed by his residence, not

5

two occupants as in the Oldsmobile the officer followed and subsequently observed Zapata–Reyes exit from.

144 Idaho 703, 708–09, 169 P.3d 291, 296–97 (Ct. App. 2007).

This case is distinguishable from *Zapata-Reyes*. Here, Officer Henry testified that he had seen a white, two-door Mercedes on Wardance Circle earlier that day and that he took note of it because he had never seen a white Mercedes in that area in his three years as a highway safety officer. He also testified that the call to dispatch described a white, two door Mercedes on Wardance Circle. Although he was mistaken to the extent that the caller did not actually describe the amount of doors on the car, a reasonable inference from these facts is that the white Mercedes that was the subject of the citizen report was the same Mercedes that Officer Henry had seen earlier in the day parked on the same road. Further, while the caller did not describe the number of occupants in the car, her description of a man driving the car is consistent with the lone male occupant—Perez—in the car when it was stopped. Perez does not contend that he did not match the caller's description of "a native guy" driving the vehicle.

Officer Henry also testified that he first went to Wardance Circle where he had previously observed the white Mercedes and that it was no longer there. He then traveled in the direction that the caller indicated the vehicle had gone and came upon the vehicle driven by Perez.

Although Perez notes that Officer Henry did not observe any other criminal behavior or erratic driving once he saw Perez's vehicle, "the absence of additional suspicious conduct, after the vehicle was first spotted by an officer [does not] dispel the reasonable suspicion . . . ." *Navarette*, 572 U.S. at 403. Indeed, "[i]t is hardly surprising that the appearance of a marked police car would inspire more careful driving for a time." *Id.* Further, Officer Henry only drove behind Perez for less than a minute before pulling him over.

The district court correctly held that the totality of the circumstances provided reasonable suspicion that the white, two-door Mercedes driven by Perez was the same vehicle that was the subject of the citizen's report to dispatch for reckless driving on Wardance Circle. Thus, the district court did not err by denying Perez's motion to suppress the evidence gathered as a result of the stop.

## IV.    CONCLUSION

We affirm the judgment of the district court.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**