## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 46098

STATE OF IDAHO,

    Plaintiff-Appellant,

v.

ISAAC LYLE SALDIVAR,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)

Boise, April 2019 Term

Opinion filed: June 5, 2019

Karel A. Lehrman, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County, Melissa Moody, District Judge.

The order of the district court granting defendant's motion to suppress is <u>reversed and remanded.</u>

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant. Kenneth K. Jorgensen argued.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Respondent. Ben P. McGreevy argued.

---

MOELLER, Justice.

### I.    NATURE OF THE CASE

The State appeals from an Ada County district court order granting Isaac Lyle Saldivar's motion to suppress evidence that he unlawfully possessed a firearm. During a pat-search, police discovered a Smith & Wesson semi-automatic pistol in the left front pocket of Saldivar's pants. The police later learned that Saldivar was a parolee who was wanted on an active warrant. The district court determined that the officers lacked reasonable suspicion to conduct the pat-search. The district court further held that the inevitable discovery exception was inapplicable to the facts of this case and granted the motion to suppress. The State argues that the search was reasonable under the circumstances, and that even if it was not, the inevitable discovery exception applies to this case. It also argues that because of his parole status, Saldivar did not retain a reasonable expectation of privacy regarding the pat-search. For the reasons stated below, we reverse.

1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On December 4, 2017, at approximately 5:30 a.m., Officers Trent Schneider and Joe Martinez were dispatched to an apartment in Boise to investigate a recent shooting. Dispatch advised the officers that one person had been shot at the apartment, other people in the apartment were intoxicated, and the gun used in the shooting was still inside the apartment.[1] It was dark outside when the officers approached the building from the front. As they approached the front door to the apartment, Saldivar came around from the back of the building carrying a tote. Because the gun was believed to still be at the premises and the shooter had not yet been identified, the officers ordered Saldivar to show them his hands, turn around, and get on the ground. Saldivar complied with these demands without conflict. At that point, Officer Schneider placed him in handcuffs and conducted a pat-search of Saldivar for weapons.

The search revealed a gun in the front left pocket of Saldivar's pants. Unbeknownst to the officers at that time, Saldivar was on parole and had waived his rights concerning searches under the Fourth Amendment and the Idaho Constitution. After the pat-search, Officer Schneider conducted a warrant check on Saldivar and discovered that he had an outstanding arrest warrant. As a result, Saldivar was taken into custody and subsequently charged with illegally possessing a firearm as a convicted felon in violation of Idaho Code section 18-3316.[2]

On February 16, 2018, Saldivar filed a motion to suppress on the basis that the officers lacked a reasonable, articulable suspicion that he was armed and dangerous, and thus the search was unreasonable. The State argued that Saldivar did not have standing to challenge the search because he waived his right to do so as a condition of his parole, the search was reasonable in light of the circumstances, and, even if the search was not reasonable, the attenuation and inevitable discovery exceptions applied. During a hearing on the motion to suppress, Officer Schneider testified that it is "standard operating procedure" to pat-search anyone who is handcuffed and that such searches are for "officer safety reasons only." He also testified that his concerns in this case were due to the shooting he was investigating, the fact that it was dark outside, and he could not see clearly.[3] Neither officer testified that they had reason to believe that

---

[1] Although not pertinent to this appeal, further investigation revealed that the gun-shot wound was self-inflicted.

[2] He was also charged with grand theft because the gun was found to be stolen; however, that charge was later dismissed because the State failed to establish probable cause that Saldivar stole it.

[3] The trial judge correctly noted that these statements were elicited through a leading question asked by the prosecutor during the officer's direct examination at the suppression hearing; however, Saldivar's attorney made no objection. Inasmuch as the statements were not stricken, they remain a part of the record.

Saldivar was dangerous, aside from the fact that he was near the residence where the shooting occurred.

After the hearing on the motion to suppress, the district court granted the motion on the bases that the search was not reasonable under the circumstances, the officers could not retroactively justify the search based on a waiver they had no knowledge of before the search, and the attenuation and inevitable discovery doctrines did not apply. The State timely appealed.

## III. STANDARD OF REVIEW

The Court conducts a bifurcated review when it considers a motion to suppress. *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005). This means that when a ruling on a suppression motion is challenged on appeal, "the Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found." *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004).

## IV. ANALYSIS

The State argues that the district court erred in concluding that the search was not reasonable under the circumstances and that the inevitable discovery doctrine does not apply to the facts of this case. It further argues that the district court erred in determining that Saldivar, a parolee, retained a reasonable expectation of privacy despite waiving his rights concerning searches of his person.

"Like the Fourth Amendment, the purpose of Art. I, § 17 is to protect Idaho citizens' reasonable expectation of privacy against arbitrary governmental intrusion. To this end, warrantless searches are presumed to be unreasonable unless the search can be justified under one of the exceptions to the warrant requirement." *State v. Christensen*, 131 Idaho 143, 146, 953 P.2d 583, 586 (1998) (internal citation omitted). With this understanding, we address the State's arguments in turn.

A. <u>The pat-search was reasonable under the totality of the circumstances</u>.

The State argues that the search was reasonable under the totality of the circumstances because the officers reasonably concluded that Saldivar may have been armed and dangerous given the nature of the potential crime they were investigating and his respective location to the scene.

> Search and seizure questions require a delicate balance between the need for police to effectively investigate crime and citizens' rights to be secure in their homes from unreasonable government intrusion. The weighing of facts needed to

reach this balance precludes the use of simple rules, but instead requires a case by case determination.

*Christensen*, 131 Idaho at 148, 953 P.2d at 588. "This Court maintains free review . . . over whether the facts surrounding the search and seizure satisfy constitutional requirements." *State v. Downing*, 163 Idaho 26, 29, 407 P.3d 1285, 1288 (2017). Officers may conduct a pat-search of a detainee who is reasonably believed to be armed and dangerous. *State v. Henage*, 143 Idaho 655, 660, 152 P.3d 16, 21 (2007). "A pat-search allows a law enforcement officer to investigate 'without fear of violence being inflicted upon the officer's person.' " *Downing*, 163 Idaho at 30, 407 P.3d at 1289 (quoting *State v. Rawlings*, 121 Idaho 930, 933, 829 P.2d 520, 523 (1992)). The test for reasonableness is objective and depends on whether the facts would warrant a reasonable person to believe "that the action taken was appropriate." *Henage*, 143 Idaho at 660, 152 P.3d at 21 (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)).

The district court acknowledged that the test for reasonableness of a search is an objective one:

> Case law requires that the officer believe -- well, let me be careful about that because it's not a subjective belief. It's that a reasonable person would believe, given all of the facts and circumstances known to that reasonable person, that the pat-down subject is armed and dangerous. And there needs to be articulable reasons why the subject is armed and dangerous.
>
> That's an objective test, not subjective belief.

After noting that it "d[id] not doubt that Officer Schneider had officer safety concerns," the district court focused on the fact that "Officer Schneider never testified that he had safety concerns about Mr. Saldivar specifically." However, it apparently disregarded the officer's testimony that he was concerned about officer safety generally because "[t]here was a gun involved. And any other times someone is detained, we have officers walking around to make sure there are no guns pulled on ourselves or others." Additionally, the officer agreed that darkness at the scene caused further officer safety concerns. Thus, by focusing on a single statement by the officer that Saldivar did not appear to be dangerous, it appears that the district court improperly relied on a subjective test in determining whether the pat-search was reasonable, rather than objectively considering the totality of the circumstances known to the officer at the time.

Further, the district court's decision appears, at least in part, to be based on its concerns with the officer's testimony that "it is standard operating procedure . . . to frisk anyone in

4

handcuffs." The district court was justifiably troubled over the constitutional implications of officers replacing the requisite "armed and dangerous" analysis with a "standard operating procedure" of frisking everyone they detain. We have similar concerns with such a notion but conclude that, under an objective analysis, the officers in this case had reasonable, articulable suspicion that Saldivar was armed and dangerous based on the facts of this case.

In *State v. Bishop*, we enumerated several factors to consider in determining whether it was reasonable for officers to believe that an individual was armed and dangerous for purposes of a pat-search. 146 Idaho 804, 819, 203 P.3d 1203, 1218 (2009). The factors include, but are not limited to:

> [W]hether there were any bulges in the suspect's clothing that resembled a weapon; whether the encounter took place late at night or in a high crime area; and whether the individual made threatening or furtive movements, indicated that he or she possessed a weapon, appeared nervous or agitated, appeared to be under the influence of alcohol or illegal drugs, was unwilling to cooperate, or had a reputation for being dangerous.

*Id*. We further stated that, "[w]hether any of these considerations, taken together or by themselves, are enough to justify a *Terry* frisk depends on an analysis of the totality of the circumstances." *Id.*

The trial court properly found, based upon the officer's testimony, that the officer did not notice any bulges in Saldivar's clothing, that the incident did not occur in a high crime area, that Saldivar did not make furtive movements, did not attempt to flee, complied with the officer's commands, and that he did not know who Saldivar was before the pat-search. Thus, aside from being in the early morning hours when it was still dark out, none of the factors listed in *Bishop* were present here. However, while the district court also recognized that "[p]roximity to the scene of a dangerous crime does factor into the reasonableness inquiry," it determined that proximity alone cannot justify a frisk. We note that our decision in *Bishop*, as well as other persuasive authority, supports a contrary conclusion. As noted, in *Bishop*, we acknowledged that any single factor could be sufficient under a totality of the circumstances standard. 146 Idaho at 819, 203 P.3d at 1218. *See also Henage*, 143 Idaho at 663, 152 P.3d at 24 (Schroeder, J., specially concurring) ("The right to frisk can arise simply from the nature of the possible crime the officer is investigating."); *In re Doe*, 145 Idaho 980, 983, 188 P.3d 922, 925 (Ct. App. 2008) ("[I]t is not unlikely that someone engaged in stealing another person[']s property would arm himself."); *State v. Burgess*, 104 Idaho 559, 561, 661 P.2d 344, 346 (Ct. App. 1983) ("[T]he

5

police had reason to suspect that Burgess may have been engaged in a burglary. It is not unreasonable to believe that burglars can be armed and dangerous.").

Further, the district court failed to give sufficient weight to the other relevant circumstances in the record that justified the pat-search. For instance, the officers' knowledge as they arrived at the scene—*i.e.*, that someone had sustained a gunshot wound in the apartment, other people at the apartment were intoxicated, and the gun was still there—when coupled with Saldivar's sudden appearance from behind the building in close proximity to the scene, provided a compelling and constitutional reason for conducting a pat-search. These factors, when considered objectively, support a reasonable belief by the officers that Saldivar may have been armed and dangerous. Accordingly, we hold that under the totality of the circumstances, the pat-search of Saldivar was reasonable.

B. <u>We need not address whether the district court erred in holding that the inevitable discovery doctrine does not apply in this case</u>.

The State also argues that the district court erred in determining that the inevitable discovery exception does not apply in this case because, even if the officers had not found the gun during the allegedly unlawful pat-search, they still would have detained Saldivar, checked for outstanding warrants, and arrested him upon discovering his outstanding warrant. It further argues that, upon arresting Saldivar, the officers would have conducted a constitutionally permitted search incident to arrest that would have led to their discovery of the illegal firearm. Saldivar argues that absent the allegedly unlawful pat-search, the officers would not have continued their inquiry and thus would not have discovered the gun. The district court agreed, averring that the State's argument—that routine questioning by the officers would have led to discovery of the warrant in this case, and thus discovery of the gun—was based on "speculative chronology," which is not sufficient to invoke the inevitable discovery exception. Accordingly, the district court determined that the inevitable discovery exception did not apply.

In light of our conclusion that the pat-search of Saldivar was reasonable, we decline to address this issue here.

C. <u>We need not address whether Saldivar retained a reasonable expectation of privacy concerning searches of his person in light of his parole waiver</u>.

The State argues that because Saldivar was a parolee, who had previously waived his right to object to searches as a condition of probation, he did not have an expectation of privacy

that society would recognize as reasonable. Therefore, the State asserts that it does not matter whether the officers knew of Saldivar's status as a parolee before they searched him.

While this Court would typically address the question of whether there was a reasonable expectation of privacy as the first step in its Fourth Amendment analysis, there is no need to do so here. While we generally agree that "parolees . . . have severely diminished expectations of privacy by virtue of their status alone," *Samson v. California*, 547 U.S. 843, 852 (2006), the State's argument is essentially a post hoc justification for the conduct of the police, based on information the police did not know at the time. However, the information the police reasonably relied on at the time of the initial detention and subsequent pat-search provided a valid constitutional basis for denying the motion to suppress. Therefore, there is no need to address this issue and we decline the State's invitation to further delineate the extent of Saldivar's Fourth Amendment rights as a parolee.

## V.    CONCLUSION

We reverse the district court's decision granting Saldivar's motion to suppress and remand the case for further proceedings consistent with this opinion.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**