**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 51783**

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | |
| Plaintiff-Respondent, | ) | Boise, February 2025 Term |
| | ) | |
| v. | ) | Opinion filed: June 27, 2025 |
| | ) | |
| JAMES MARK POPP, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Lansing L. Haynes, District Judge.

The district court's order denying the motion to suppress is <u>reversed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Jason C. Pintler argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. John C. McKinney argued.

_____

MEYER, Justice.

James Mark Popp appeals from the district court's order denying his motion to suppress. For the reasons stated below, we reverse the district court's decision, vacate Popp's judgment of conviction, and remand the case.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On the evening of January 22, 2021, officers from the Coeur d'Alene Police Department were on a "downtown bar patrol" in Coeur d'Alene's bar district, looking for possible criminal activity in bar parking lots, on the streets, and around the bars. While patrolling the area on foot near the Iron Horse Bar and Grill ("Iron Horse"), an officer observed Popp sitting in the front passenger seat of a gold-colored Mercedez Benz with out-of-state license plates parked in the Iron Horse parking lot. Popp was "depositing his cigarette ash out the window." The officer approached the passenger side of the vehicle and began speaking with Popp. Body camera footage of the exchange shows that when the officer informed Popp that depositing ash out of the window was littering, Popp replied that he was not going to put the cigarette out and continued to flick ash from

his cigarette into the parking lot. Based on this exchange, the officer asked for Popp's driver's license, which he provided.

Shortly after the encounter with Popp began, two more officers approached the vehicle. The first officer handed Popp's identification to another officer, who ran Popp's information through dispatch. While waiting for a response from dispatch, a K-9 officer and his drug-sniffing dog, Halo, performed an exterior sniff on the vehicle. When Halo positively alerted for a controlled substance, the first officer asked Popp and the driver to exit the vehicle. An officer then asked if he could search Popp. Popp consented. During the initial search of Popp's person, an officer discovered a rolled-up $1 bill in Popp's front pants pocket. Part of the bill contained residue from a white substance. The bill was field tested and came back presumptively positive for cocaine. Officers placed Popp under arrest and conducted a second search of his person, in which they discovered a small clear baggie that contained a white powdery substance. The material inside the baggie was later determined to be cocaine.

The State charged Popp with possession of cocaine (a felony under Idaho Code section 37-2732(c)(1)), possession of drug paraphernalia (a misdemeanor under Idaho Code section 37-2734A(1)), and littering (an infraction under Coeur d'Alene Municipal Code section 8.36.100). Popp filed a motion to suppress, arguing that his initial seizure was unlawful. He contended that officers lacked reasonable suspicion to detain him under Coeur d'Alene Municipal Code section 8.36.100 because cigarette ash is not "litter" under the ordinance. Alternatively, he argued that even if cigarette ash is "litter" under the ordinance, the ordinance only applies to public property and Popp was smoking in a privately owned parking lot. Finally, Popp maintained that the ordinance was void for vagueness as applied to his conduct. The State opposed the motion, arguing that the officers had reasonable suspicion that Popp was littering in the officers' presence, in violation of the ordinance or, alternatively, under Idaho Code section 18-7031. Popp argued in response that he did not violate Idaho Code section 18-7031 because the statute prohibits depositing lighted material or other waste substances on any place not authorized by the property owner, and noted "[t]here have been no facts presented to support" the conclusion that the Iron Horse "prohibits [its] customers from smoking in the bar's parking lot without an ashtray or similar receptacle to collect the ash." He also maintained that cigarette ash does not constitute "lighted material" under the statute and urged the district court to apply the rule of lenity to his case.

2

At the suppression hearing, the State maintained that the officers had reasonable suspicion to detain Popp because he was depositing cigarette ash on the ground outside of a designated smoking area. Officers testified regarding the layout of the Iron Horse Bar, including whether the bar provided ashtrays:

[Officer]. Yes, the main entrance faces Sherman [a main thoroughfare in Coeur d'Alene].

[Prosecutor]. And does that have a sidewalk area?

[Officer]. Yes.

[Prosecutor]. And can patrons drink and eat on that sidewalk area?

[Officer]. They can if it's properly marked off with rope.

[Prosecutor]. Does that area have ashtrays?

[Officer]. Yes.

[Prosecutor]. Why?

[Officer]. Because they can't smoke inside the bar so they can smoke out front.

[Prosecutor]. All right. Do you know how many ashtrays the bar utilizes on the sidewalk outside?

[Officer]. I do not.

[Prosecutor]. At least one?

[Officer]. At least one.

On cross-examination, officers testified to their observation of other individuals using the ashtrays:

[Popp's attorney]. You testified about seeing at least one ashtray out front of the bar in the in the area I presume you're talking about the area that's cordoned off to the bar patrons on the sidewalk?

[Officer]. That area they cordon off *in the summer*, yes.

[Popp's attorney]. And would it be fair to stay that you see people deposit their burnt or used cigarette butts into that ashtray?

[Officer]. Yes.

(Emphasis added).

Officers testified that that sole basis for the detention was their observation of Popp flicking ash into the parking lot:

[Popp's attorney]. Did he at any point in time throw his cigarette butt on the ground?

[Officer]. No.

[Popp's attorney]. Did he throw the wrapper or carton of the—that would contain the cigarettes on the ground?

[Officer]. No.

[Popp's attorney]. Did he throw anything other than tapping the burnt ash off the top of that cigarette out the car window?

[Officer]. No.

[Popp's attorney]. So the sole basis for the littering charge is the burnt ash being tapped off the end of the cigarette?

[Officer]. Yes.

Officers did not receive complaints about Popp smoking out back from the owner or any employee of the Iron Horse:

[Popp's attorney]. Did any person from the Iron Horse, the owner or employee, contact you and ask you to contact Mr. Popp about cigarette smoking in the parking lot?

[Officer]. No.

[Popp's attorney]. So to be clear, you weren't—you didn't approach him because the owner or an employee of the bar was concerned about his smoking out there in their parking lot?

[Officer]. That is correct.

Popp argued that the State failed to meet its burden of proof because it "failed to call either the owner or an agent of the Iron Horse Bar and Grill to come testify that they require their customers when they're out in the parking lot smoking to use an ashtray, ash can or something else to tap the cigarette, the ash off the ends of their cigarettes." Popp maintained that tapping the ash off the end of a cigarette is something that "just about everybody down there does when they're out there smoking." Popp argued that the statute was vague as applied to Popp's conduct because it did not specifically refer to tapping out burnt cigarette ash as one of the forms of litter, and it left the statute open to interpretation where "any smoker out there is taking his or her chances as to what somebody is going to interpret this statute or ordinance to mean."

The State conceded that its argument was "chippy" and "technical," but explained its position was the statute, in essence, stated "Well, you can litter if you do so in the appropriate device or the appropriate place and the Iron Horse was set up. They had a place where people could smoke in the front of the bar and they had ashtray—or ashtrays or an ashtray that people could use." The State relied on the physical layout of the Iron Horse and the language of the statute and argued those factors combined "would give someone notice that they can't simply take their

4

cigarette and deposit their ash outside of a bar in the bar's parking lot, when you can sit in that bar's seating area outside and use an ashtray." The State urged the district court to make the "reasonable inference" that "if you have a place for patrons to smoke and you have a receptacle or receptacles for them to deposit their used smoking material, that they're not going to want that same behavior to be engaged in in another location on their property," and that generally "no one is going to want someone smoking in a place that is not designed for them to be smoking."

The district court denied Popp's motion to suppress. The district court noted that "the State has conceded that a seizure of Mr. Popp took place when the police asked him for his identification and he declined, and they persisted in procuring that identification on the basis that an infraction had occurred in their presence." The district court ruled that a violation under the city ordinance occurred. It also explained that Idaho Code section 18-7031 "makes it illegal for any person to deposit any . . . debris, litter, trash, lighted material, or other waste substances not authorized by the City by the owner thereof." The district court concluded the officers' request for identification "was a reasonable demand" because an infraction under either the city ordinance or the state statute was committed in the officers' presence. It determined that neither the city ordinance nor the state statute was vague as applied to Popp's conduct and declined to apply the rule of lenity. The district court determined that Popp's arrest was reasonable and supported by probable cause based on the search of Popp's person, which had revealed a bill with residue that tested positive for cocaine.

Thereafter, Popp entered a conditional guilty plea to the possession charge, preserving his right to appeal the district court's denial of his motion to suppress. In exchange, the State dismissed the paraphernalia charge. The district court sentenced Popp to a unified sentence of five years with the first two years fixed but suspended the sentence and placed him on supervised probation for two years. The court ordered this sentence to run concurrently with the sentence imposed in another felony case. Popp appealed the denial of his motion to suppress.

In an unpublished decision, the Court of Appeals affirmed Popp's conviction. *State v. Popp*, No. 49415, 2024 WL 90387, at *4 (Idaho Ct. App. Jan. 9, 2024). Although the Court of Appeals disagreed with the district court's ruling that Popp had violated the city ordinance, it concluded that the officers had reasonable suspicion to believe that Popp had violated Idaho Code section 18-7031. Because the initial detention was proper, the Court of Appeals reasoned that the subsequent dog sniff provided officers with additional reasonable suspicion that "Popp was, had

been, or was about to be engaged in criminal activity." *Id.* Therefore, the subsequent search which revealed drugs and paraphernalia was lawful. *See id.*

Popp filed a petition for review, which we granted. At oral argument, the State conceded that the city ordinance did not apply in this case. As a result, the sole issue on appeal is whether officers had reasonable suspicion to detain Popp under Idaho Code section 18-7031.

## II.      STANDARDS OF REVIEW

When this Court is presented with a petition for review of a Court of Appeals decision, we give serious consideration to the Court of Appeals' views but review the lower court's decision directly. *State v. Buehler*, 173 Idaho 717, 720, 547 P.3d 1203, 1206 (2024). "This Court thus acts as if the case were on direct appeal from the district court." *State v. Cohagan*, 162 Idaho 717, 720, 404 P.3d 659, 662 (2017) (quoting *State v. James*, 148 Idaho 574, 576, 225 P.3d 1169, 1171 (2010)).

This Court reviews a district court's order granting a motion to suppress evidence using a bifurcated standard of review. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). We accept "the trial court's findings of fact unless they are clearly erroneous but will freely review the trial court's application of constitutional principles to the facts found." *State v. Randall*, 169 Idaho 358, 363, 496 P.3d 844, 849 (2021) (quoting *State v. Danney*, 153 Idaho 405, 408, 283 P.3d 722, 725 (2012)). "At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court." *State v. Conant*, 143 Idaho 797, 799, 153 P.3d 477, 479 (2007) (citing *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995)). "'[D]eterminations of reasonable suspicion are reviewed de novo,' while findings of fact that support a determination of reasonable suspicion are reviewed for clear error." *State v. Perez*, 164 Idaho 626, 628, 434 P.3d 801, 803 (2019) (quoting *State v. Morgan*, 154 Idaho 109, 111, 294 P.3d 1121, 1123 (2013)).

## III.     ANALYSIS

We note that it is proper for us to consider section 18-7031 as a substitute basis for finding reasonable suspicion, despite the officer initially citing Popp under the city ordinance. This is permissible since the relevant inquiry for determining reasonable suspicion is the objective facts known to the officer at the time of the incident. The officer's subjective belief as to which code sections justified the seizure is not controlling. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (An

officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").

### A. The officers lacked reasonable suspicion that Popp was violating Idaho Code section 18-7031.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The protection against unreasonable searches and seizures has been incorporated through the Due Process Clause of the Fourteenth Amendment to apply to the states. *See, e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Generally, "[w]hen a defendant seeks to suppress evidence that is alleged to have been obtained as a result of an illegal seizure, the defendant bears the burden of proving that a seizure occurred," *State v. Pachosa*, 160 Idaho 35, 38, 368 P.3d 655, 658 (2016) (quoting *State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009)), while the State bears the burden of establishing that the seizure was reasonable, *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009) (citing *State v. Anderson*, 140 Idaho 484, 486, 95 P.3d 635, 637 (2004)). In this case, the State conceded that a seizure occurred when officers obtained Popp's identification and ran it through dispatch.

"The Fourth Amendment's reasonableness requirement applies to limited investigatory detentions." *Pachosa*, 160 Idaho at 38, 368 P.3d at 658 (citation omitted). "[D]etentions must be justified at their inception, and the level of justification required depends on how intrusive the detention was." *Id.* If the court determines the detention is justified, the detention must still be "reasonably related in scope to the circumstances which justified the interference in the first place" to avoid violating the Fourth Amendment. *Id.* at 38–39, 368 P.3d at 658–59 (quoting *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)). A limited detention is justified if it is supported by reasonable suspicion. *Terry*, 392 U.S. at 28–29. Reasonable suspicion is a "somewhat abstract" or "elusive concept" that can be difficult to quantify. *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citations omitted). Generally, "[t]he quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause." *State v. Huntley*, 170 Idaho 521, 526, 513 P.3d 1141, 1146 (2022) (quoting *Bishop*, 146 Idaho at 811, 203 P.3d at 1210). "The standard of 'reasonable articulable suspicion' is not a particularly high or onerous standard to meet." *State v. Danney*, 153 Idaho 405, 410, 283 P.3d 722, 727 (2012). It simply requires "more than 'a mere hunch or inchoate and unparticularized suspicion.'" *Huntley*, 170 Idaho at 526, 513 P.3d at 1146 (quoting *Bishop*, 146 Idaho at 811, 203 P.3d at 1210).

Reasonable suspicion "exists when the officer—or officers—can articulate specific facts which, together with rational inferences from those facts, reasonably justify a suspicion that criminal activity is occurring." *Danney*, 153 Idaho at 409–10, 283 P.3d at 726–27 (citation omitted). "Officers need not have reasonable suspicion of a particular crime, only that 'criminal activity may be afoot.'" *State v. Maahs*, 171 Idaho 738, 745, 525 P.3d 1131, 1138 (2023) (quoting *Arvizu*, 534 U.S. at 273). "[A]n officer may take into account his experience and law enforcement training in drawing inferences from facts gathered." *Danney*, 153 at 410, 283 P.3d at 727 (citation omitted). "[T]he existence of alternative innocent explanations does not necessarily negate reasonable suspicion." *Id.* at 411, 283 P.3d at 728. The reasonableness of the officer's suspicion is "evaluated based on the totality of the circumstances at the time of the [detention]." *Id.* at 410, 283 P.3d at 727. "The test for reasonableness is objective and depends on whether the facts would warrant a reasonable person to believe 'that the action taken was appropriate.'" *State v. Saldivar*, 165 Idaho 388, 391, 446 P.3d 446, 449 (2019) (quoting *State v. Henage*, 143 Idaho 655, 660, 152 P.3d 16, 21 (2007)).

The totality of the circumstances in this case do not demonstrate that officers had reasonable suspicion to detain Popp for violating Idaho Code section 18-7031. Idaho Code section 18-7031 makes it an infraction to deposit a wide range of substances in any place without authorization:

> It shall constitute an infraction for any person, natural or artificial, to deposit upon any public or private property within this state any debris, paper, litter, glass bottles, glass, nails, tacks, hooks, hoops, cans, barbed wire, boards, trash, garbage, lighted material or other waste substances on any place *not authorized by* any county, city, village or *the owner of such property*, and is punishable by a fine of one hundred fifty dollars ($150).

I.C. § 18-7031 (emphasis added). Officer testimony reflected that the sole reason Popp was detained was because an officer observed him smoking and flicking cigarette ash out the window of a parked car onto the surface of a privately owned parking lot. Officers did not observe Popp doing anything else. They were not responding to complaints from the Iron Horse about Popp smoking in their parking lot. There was no indication that the Iron Horse had posted "no smoking" signs around the parking lot, or other parts of the building, to suggest that smoking in that location was prohibited. In our view, the presence of ashtrays or an ashtray in front of the Iron Horse, along a public sidewalk that is cordoned off for dining during the summer months, does not necessarily indicate that Popp's conduct in the private parking lot behind the bar was not authorized by the

8

owners of the Iron Horse. Common experience dictates that it is a normal occurrence for patrons of a bar to smoke in the bar's private parking lot. Officers did not contact the Iron Horse to determine whether smoking out back was prohibited before they detained Popp on suspicion of littering and no evidence was presented at the suppression hearing to show that smoking in their parking lot was prohibited. Further, the officer testimony does not indicate that they possessed reasonable suspicion that Popp was engaged in any other criminal activity at the time he was detained. Thus, we hold that the officers' decision to detain Popp was not justified and that they were acting on a mere hunch or inchoate suspicion.

## IV. CONCLUSION

For the reasons stated above, we reverse the district court's order denying the motion to suppress, vacate Popp's judgment of conviction, and remand this case for further proceedings consistent with this opinion.

Justices BRODY and ZAHN CONCUR.


MOELLER, J., dissenting.

It may be tempting to view this case as simply asking whether flicking ash from a burning cigarette amounts to a violation of Idaho Code section 18-7031, Idaho's littering statute. However, this is a question any juror can competently answer by reviewing the conduct and comparing it to the language of the statute, which makes it illegal to "deposit upon any public or private property within this state any debris, . . . trash, garbage, *lighted material* or other waste substances on any place not authorized by any county, city, village or the owner of such property." I.C. § 18-7031. Instead, this case raises an intriguing question about the meaning of "reasonable suspicion," for which the majority has given a puzzling answer.

It is well settled that for law enforcement officers to briefly detain an individual based on their perception that a crime is taking place, they "need not rule out the possibility of innocent conduct." *State v. Perez*, 164 Idaho 626, 628–29, 434 P.3d 801, 803–04 (2019) (quoting *Navarette v. California*, 572 U.S. 393, 403 (2014)); *United States v. Arvizu*, 534 U.S. 266, 277 (2002). Ironically, ruling out the possibility of innocent behavior is usually the initial purpose of such a detention. The majority now appears to depart from this standard and requires that the officers' knowledge amount to the level of probable cause to initiate a limited investigatory detention. Under the majority's analysis, only once the officer *confirmed* smoking was not allowed in the

Iron Horse parking lot with the manager or owner of the premises, could there have been a basis for reasonable suspicion. Because I do not agree that our reasonable suspicion standard requires that every element of a suspected crime be clearly established at the time a brief detention is initiated, I must respectfully dissent.

Under the Fourth Amendment, "[w]hether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer at or before the time of the stop." *Perez*, 164 Idaho at 629, 434 P.3d at 804 (alteration in original) (quoting *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009)). "The test for reasonableness is objective and depends on whether the facts would warrant a reasonable person to believe 'that the action taken was appropriate.' " *State v. Saldivar*, 165 Idaho 388, 391, 446 P.3d 446, 449 (2019) (quoting *State v. Henage*, 143 Idaho 655, 660, 152 P.3d 16, 21 (2007)).

Here, it is the majority's view that it was unreasonable for the officer to conclude that Popp's conduct provided the reasonable suspicion necessary to justify a limited investigative detention. The majority focuses on the absence of "no smoking" signs and the presence of ashtrays in front of the Iron Horse and concludes that this "does not *necessarily indicate* that Popp's conduct . . . was not authorized by the owners." Majority Op., *supra*, at 8–9 (emphasis added). Even if they are correct, that is not how reasonable suspicion works. Rather, it is based on the totality of the circumstances, which I believe established reasonable suspicion here. Even if the facts presented to the officers did not "*necessarily indicate* that Popp's conduct . . . was not authorized," the facts still do not foreclose a reasonable inference that the conduct was unauthorized. The officers testified during the motion to suppress that they believed cigarette ash to be litter, and they were aware that other officers had cited individuals for similar conduct alleged here. As the majority concedes, "when the officer informed Popp that depositing ash out of the window was littering, Popp replied that he was not going to put the cigarette out and continued to flick ash from his cigarette into the parking lot." *Id.* at 2. It was only at this point that the officer asked to see Popp's driver's license, which he provided. Shortly thereafter, while the license was being run through dispatch, a drug-sniffing dog alerted the K-9 officer to the presence of a controlled substance.

It was the State's position that the cordoned-off area in front of the Iron Horse, where smoking was permitted, evidenced an intent that patrons only smoke there and not in other areas around the building, including the parking lot. The majority effectively concludes that the officer's

assessment of the situation prior to the dog-sniff was unreasonable; however, an equally reasonable assessment could be that the ashtrays were the only location where patrons of the Iron Horse were permitted to deposit ash from their cigarettes. Changing the facts slightly highlights this point. Suppose that Popp had dropped an empty bag of potato chips outside the car window instead of cigarette ash, and then proceeded to drop a second empty bag out the window when told not to do so. Further, imagine that instead of ash trays in front of the Iron Horse, there was a trashcan. Under such facts, there would be little doubt that an officer would have reasonable suspicion to believe that Popp's conduct amounted to littering under Idaho Code section 18-7031. Here, the ephemeral nature of cigarette ash should not change this analysis, and it does not render the officer's suspicion—that Popp's observed conduct amounted to littering—as unreasonable for purposes of establishing reasonable suspicion. Therefore, I respectfully dissent.

To be clear, notwithstanding my dissent, it is not my position that it is necessarily a sound policy decision to treat deposited cigarette ash as litter. As the majority has observed, "[i]t is a normal occurrence for patrons of a bar to smoke in the bar's private parking lot." Majority Op., *supra*, at 9. While they may be correct, cigarette ash falls squarely within the purview of Idaho Code section 18-7031, which prohibits the unlawful depositing of "lighted material." The phrase "lighted material" certainly covers a wide range of dangerous items, such as fireworks, matches, or explosive devices; thus, it is certainly broad enough to cover burning ash from any lighted object, such as a cigarette. The beauty of our system of justice is that in close cases such as this, we have a body well equipped to make such determinations—the jury. Unfortunately, we will never know how a jury would have viewed this evidence because Popp opted to enter a conditional guilty plea and appealed. Nevertheless, I have complete faith that if presented with this question, an Idaho jury would have applied both the law and their native common sense in answering this question, regardless of whether it might differ from this Court's view.

Chief Justice BEVAN CONCURS.