**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51060**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 20, 2026** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JADE TAYLER BUDD, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Barry McHugh, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; T. Michael MacEgan, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Jade Tayler Budd appeals from his judgment of conviction for possession of a controlled substance. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

An officer and his K-9 partner were near the interstate when the officer observed a vehicle containing two occupants, both with sunken cheek bones. The officer followed the vehicle onto the interstate and observed the vehicle touch the left fog line and fail to signal for five seconds before changing lanes. While attempting to stop the vehicle, the officer observed that the driver was taking longer than normal to completely stop. In addition, the officer witnessed furtive movements by the passenger, where it appeared she dove in front of her seat and then leaned over

1

the console. These movements caused the officer to believe the occupants of the vehicle may have weapons or contraband.

After the vehicle stopped, the officer approached in front of the right passenger door. Budd, the driver, was identified by his driver's license. The officer told Budd the reason for the stop and asked him for the vehicle's registration and proof of insurance. The officer noticed that Budd had glassy eyes, sunken cheekbones, droopy eyelids, and facial tremors. Budd claimed he could not provide the registration and proof of insurance because he had just purchased the vehicle. The officer also observed a large torch lighter in the driver's door panel of the vehicle. The officer asked the passenger why she leaned over the console when Budd stopped the vehicle. The passenger indicated that she was attempting to give Budd a hug.

Based on the above circumstances, the officer had both occupants exit the vehicle. The officer stated he was going to have the K-9 perform an open-air sniff. Budd consented to the search but declined the opportunity to roll up the vehicle's window before the search. As a result, the K-9 was able to put his head inside the vehicle. As Budd was exiting the vehicle, he informed the officer he had a firearm in the vehicle. The officer searched Budd. Before having Budd and the passenger walk away from the vehicle, the officer received a response from dispatch notifying the officer that Budd's driver's license was suspended. When asked if there were drugs and/or paraphernalia in the vehicle, Budd responded that the vehicle was not his.

During the search, the K-9 alerted to the presence of drugs and/or paraphernalia after sniffing the seam between the passenger door and window. The officer placed Budd in handcuffs and another officer arrived at the scene. The original officer searched the vehicle and found a firearm, methamphetamine, and drug paraphernalia. The officer asked Budd about potential drugs or drug paraphernalia in the vehicle, to which Budd responded that the drugs belonged to the passenger. In addition, Budd informed the officer that there was marijuana and a methamphetamine pipe in the vehicle. Budd later took ownership of the drugs, admitting he asked the passenger to hide the methamphetamine.

The State charged Budd with delivery of a controlled substance and possession of drug paraphernalia. Budd filed a motion to suppress, asserting that the officer unlawfully extended the traffic stop and searched the vehicle without reasonable suspicion. In addition, Budd argued the officer's use of the K-9 constituted an unlawful warrantless search. The district court denied Budd's motion to suppress, finding that the officer had reasonable suspicion that Budd was driving

under the influence of drugs to justify field sobriety tests. Additionally, the district court held that the officer did not unlawfully extend the stop because he was waiting to verify Budd's information with dispatch. The district court also concluded the K-9's alert to potential drugs in the vehicle provided probable cause to search Budd's vehicle.

Thereafter, Budd entered a conditional guilty plea to possession of a controlled substance (I.C. § 37-2732(c)) and reserved the right to appeal the denial of his motion to suppress. As part of the plea agreement, the State dismissed the additional charge. Budd appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

"Mindful" of this Court's opinion in *State v. Grigg*, 149 Idaho 361, 233 P.3d 1283 (Ct. App. 2010), Budd nevertheless argues the district court erred in denying his motion to suppress. More specifically, Budd contends the officer "unlawfully extended the traffic stop to conduct the dog sniff, without reasonable suspicion of criminal activity." The State responds that Budd has failed to show error because the officer "observed numerous factors supporting his suspicion that drug activity may be occurring," which "supported two separate findings of reasonable suspicion that justified expanding the scope of the traffic stop to conduct a drug investigation." We hold that Budd has failed to show the district court erred in denying his motion to suppress.

A limited investigatory detention based on less than probable cause is permissible when justified by an officer's reasonable articulable suspicion that a person has committed or is about to commit a crime. *State v. Perez*, 164 Idaho 626, 628, 434 P.3d 801, 803 (2019). Whether an officer possessed reasonable suspicion is evaluated based on a totality of the circumstances known to the

officer at or before the time of the stop. *State v. Gonzales*, 165 Idaho 667, 673, 450 P.3d 315, 321 (2002). The level of suspicion required to create reasonable suspicion is less than necessary for probable cause and considerably less than proof by a preponderance of the evidence. *State v. Russo*, 157 Idaho 299, 305, 336 P.3d 232, 238 (2014). An officer may draw on his training and experience in forming reasonable inferences from observed facts. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Ramirez*, 145 Idaho 886, 889, 187 P.3d 1261, 1264 (Ct. App. 2008). However, the purpose of a stop is not fixed, additional factors may present themselves that evolve the suspicion of criminality different from that which is initially prompted the stop. *State v. Sheldon*, 139 Idaho 980, 984, 88 P.3d 1220, 1224 (Ct. App. 2003). Thus, extension of the stop violates the Fourth Amendment unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose. *State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016).

In *Grigg*, we held that an officer's testimony that the defendant had glassy and bloodshot eyes, coupled with reddening of the conjunctiva and eyelid tremors which are characteristics indicating a person is under the influence of a controlled substance, provided reasonable and articulable suspicion that the defendant was under the influence of drugs. *Grigg*, 149 Idaho at 364, 233 P.3d at 1286. Similarly, the district court's unchallenged factual findings in this case support its conclusion that the officer had reasonable suspicion to detain Budd. Those findings include that the officer observed Budd had glassy eyes, sunken cheekbones, droopy eyelids, and facial tremors. Based on these circumstances, it was constitutionally permissible for the officer to detain Budd to investigate whether he was driving under the influence.

In addition to signs of impairment, the officer observed furtive movements within the vehicle prior to the stop and identified a large torch lighter in the driver's side door--an item he associated with drug use. These additional factors added to the reasonable and articulable suspicion of criminal activity, which was sufficient to justify expanding a traffic stop into a drug investigation. *See State v. Stonecypher*, 170 Idaho 156, 508 P.3d 1230 (2022) (holding detention of driver was not unlawfully prolonged due to development of reasonable, articulable suspicion that driver was under the influence and in possession of drugs and/or drug contraband). Moreover, the district court found there was no unlawful extension of the stop because the officer was waiting

for information relating to Budd's driver's license status when the officer developed reasonable suspicion justifying field sobriety tests for driving under the influence and reasonable suspicion justifying a drug investigation. Budd has failed to show the district court erred in denying his motion to suppress.

## IV.

## CONCLUSION

The district court did not err in denying Budd's motion to suppress. Therefore, Budd's judgment of conviction for possession of a controlled substance is affirmed.

Judge HUSKEY and Judge Pro Tem MELANSON, **CONCUR**.